REILLY, Chief Judge:
 

 What may well be described as another symptom of the disease besetting the usage of the English language has brought to this court a controversy over the meaning of the verb “steal.”
 
 [1]
 
 Drawn into issue by the government’s appeal is a pretrial order dismissing without prejudice three counts of an indictment charging (1) a killing in perpetrating the crime of robbery (defined as murder in D.C.Code 1973, § 22-2401), (2) armed robbery
 
 (id.
 
 §§ 22-2901, 22-3202), and (3) robbery
 
 (id.
 
 § 22-2901).
 

 The court below held that the robbery count was constitutionally defective in that its wording did not mention an essential element of the crime: specific intent.
 
 [2]
 
 The government chose to appeal directly rather than seek reindictment. The text of the challenged robbery count reads:
 

 On or about June 20, 1973, within the District of Columbia, Wilbert N. Owens and Gregory S. Lofton, by force and violence and against resistance and by putting in fear,
 
 stole
 
 and took from the person and from the immediate actual possession of William F. Loving, property of value belonging to Motel Assoc., Inc., a body corporate, consisting of money; and a pistol belonging to Jerome L. Hol-brook. (Emphasis added.)
 

 According to the motion of defense counsel granted by the court, the count quoted failed “to allege all the material and necessary elements of robbery in that it fails to allege that the defendants ‘took and
 
 carried away with the specific intent to steal
 
 property of value’, both necessary and material elements of the crime of armed robbery.” (Emphasis in original.) Instead, the indictment used the word “stole” —the past tense of “steal” — rather than the italicized words.
 

 In ruling favorably on the motion, the court accepted the view that an indictment should contain all the elements of the crime intended to be charged. We have no quarrel with this premise, for it is well established that this requirement is necessary to apprise a defendant of what he must be prepared to meet. Russell v. United States, 369 U.S. 749, 763-64, 82 S. Ct. 1038, 8 L.Ed.2d 240 (1962).
 
 See also
 
 United States v. Pendergrast, D.C.App., 313 A.2d 103, 104 (1973). Nor do we disagree with the court’s second thesis that although the local robbery statute, D.C.Code 1973, § 22-2901,
 
 [3]
 
 does not mention specific intent, it must be read as referring to the common law crime of robbery, Neufield v. United States, 73 App.D.C. 174, 118 F.2d 375 (1941), a necessary element of which is “specific intent to take the property of another.” Richardson v. United States,
 
 *752
 
 131 U.S.App.D.C. 168, 169, 403 F.2d 574, 575 (1968).
 

 The court also observed that it is not enough for an indictment to “track” the statutory language unless the statute itself fully sets forth all the elements needed to constitute the particular offense. The court cited our decision in United States v. Pendergrast,
 
 supra
 
 (which did not deal with the robbery statute); United States v. Carll, 105 U.S. 611, 613, 26 L.Ed. 1135 (1882); and United States v. Simmons, 96 U.S. 360, 362, 24 L.Ed. 819 (1878), for this proposition.
 

 Again, there can be no question about the soundness of this observation but it is clearly not dispositive of this case. The challenged indictment here, unlike the
 
 Pen-dergrast
 
 indictment, did not merely repeat the language of the statute but used the word “stole” — a word which does not appear in the Code definition of the offense of robbery.
 
 See
 
 n. 3
 
 supra.
 

 Where the court went astray, however, was in rejecting the government’s position that the word “steal” did put the defendants on notice that specific intent was an element of the crime of which they were accused. This ruling not only flies in the face of customary understanding and usage of the word
 
 [4]
 
 but also of a decision of the Supreme Court ignored in the memorandum accompanying the order of dismissal. In Morissette v. United States, 342 U.S. 246, 271, 72 S.Ct. 240, 254, 96 L.Ed. 288 (1952), the Court in distinguishing the offenses of conversion and stealing, noted that “ ‘[t]o steal means to
 
 take away from one
 
 in lawful possession without right with the
 
 intention to keep wrongfully.’ ”
 
 (Citations omitted; emphasis in original.)
 
 Accord,
 
 United States v. Turley, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957).
 
 Sec also
 
 Neufield v. United States,
 
 supra,
 
 holding that an indictment drafted
 
 in liaec ver-ba
 
 as the one at issue here, expressed all the elements of the crime of common law robbery.
 

 In order to sustain the court below, it would therefore be necessary to hold that the word “steal” includes a taking of property without intent to deprive the possessor of its use. One scarcely needs to read either the dictionary or the
 
 Morissette
 
 opinion to know that the very word imports such specific intent. According to those masters of the English language, the scholars whose translations of the Vulgate and the available Greek and Hebrew manuscripts produced the King James version of the Bible, the Lord, in setting His canon against thievery, found it sufficient to say ■ — '“Thou shall not steal”
 
 [5]
 
 not “Thou shall not carry away someone else’s property with specific intent to steal.” And even where these scholars used the word in a figurative sense,
 
 e. g., “. . .
 
 so Absalom stole the hearts of the men of Israel,” it was in the context of a deliberate and premeditated action.
 
 [6]
 
 Indeed, it is difficult to think of any use of the word consistent with inadvertence on the part of the stealer or acquiescence on the part of the victim, with the possible exception of.the popular line, “Who stole my heart away .”
 
 [7]
 
 — an exercise of poetic license not permitted the draftsman of pleadings.
 

 Thus, if this court should agree with what the motion filed in the trial court insists is the proper way to frame an allegation of robbery,
 
 viz., “took and carried away with the specific intent to steal property of value”
 

 [8]
 
 and inserted the conven
 
 *753
 
 tional meaning of the word steal, in place of that actual word, the indictment would read, “took and carried away with the specific intent to carry away intentionally property of yalue.” Surely nothing in the Constitution requires such absurd tautology and the United States Attorney is not to be censured for refusing to clutter his indictments with such redundancies.
 
 [9]
 

 In fairness to the conscientious trial judge, his erroneous disposition of the motion apparently was due to some confusion in the state of the authorities, rather than to any lack of linguistic precision. As we have noted, the United States Court of Appeals for this jurisdiction in
 
 Neufield
 
 had expressly approved a robbery indictment couched in the same terms as the one drawn into issue here. Some 20 years later, a division of this same court in a 2-1 decision reversed a conviction on the ground that there had been a failure to charge the jury that the crime of robbery requires “specific intent to deprive the victim of property.” The majority opinion, also noting an exception to the wording of the indictment which, like the one here, used the word “stole”, held that while the indictment in itself would not require reversal, it “leaves much to be desired both in completeness and in clarity” (Jackson v. United States, 121 U.S.App.D.C. 160, 162, 348 F.2d 772, 774 (1965)). This dictum— which was all it amounted to — was subsequently cited by counsel in Austin v. United States, 134 U.S.App.D.C. 259, 262, 414 F.2d 1155, 1158 (1969), as a ground for reversal. This time the same court in affirming the robbery conviction gave the argument short shrift, after noting that
 

 . . . the judge charged the jury explicitly that “[a]t the time of taking and carrying away the property the Defendant must have had the specific intent to deprive the complainant of his property and to convert and appropriate it to the use of the taker.” We think that in these circumstances the words of the indictment, “stole and took away from the * * * immediate actual possession,” sufficiently apprised appellant of the nature of the crime and the intent which is a predicate for that crime.
 
 [4]
 
 Though we
 

 adhere to our statement in
 
 Jackson, supra,
 
 that it would be preferable for the indictment to spell out the requisite in
 
 *754
 
 tent specifically, we do not find cause for reversal.
 

 While the
 
 Austin
 
 opinion should have put this particular semantic controversy to rest, the issue was revived again in the circuit court in United States v. Robinson, 154 U.S.App.D.C. 265, 475 F.2d 376 (1973), where appellant assigned as error the denial of a motion to amend a conventional robbery count to set forth express reference to intent, contending that the indictment which was taken into the jury room failed to apprise the jury of this requisite element. The court rejected this argument, pointing out that, as in
 
 Austin,
 
 the trial court’s instructions impressed upon the jury that specific intent was essential to a robbery conviction. The opinion written by Judge Leventhal also conceded that the indictment as drafted was sufficient in law (footnote 26,
 
 id.
 
 at 274, 475 F.2d at 385) but concluded by urging that “pertinent indictment forms be promptly updated and refined.”
 
 [10]
 

 Although in the case before us the government cited the
 
 Jackson, Austin,
 
 and
 
 Robinson
 
 cases,
 
 supra,
 
 as supporting its position, the court in granting the dismissal motion over its opposition, chose somewhat paradoxically to rely on the dicta in those decisions rather than the actual holdings of affirmance. It pointed out that in all three cases, the circuit court was dealing with the issue in a postconviction appeal instead of in a pretrial context, as here. It is true that in these opinions the circuit court noted that in their final instructions, the trial judges explained to the jury all the elements of the crime of robbery, including the requisite intent, but this does not mean that a fatal defect in an indictment was cured thereby.
 

 For if the purpose of the requirement that an indictment must contain all the elements of the offense is to “sufficiently apprise the defendant of what he must be prepared to meet”,
 
 [11]
 
 then it is plain that any prejudice to the defendant resulting from the failure of the indictment to im elude an essential allegation cannot be remedied by the trial judge’s charge to the jury. Final instructions are a postliminary event in the trial. When given, both prosecution and defense have already rested and presented their summaries of the testimony to the triers of fact. Manifestly, anything said at this juncture would not put a defendant on notice of what charges he has to meet, for his opportunity to rebut such charges by cross-examination or exculpatory testimony has long since passed.
 

 Our opinion is that the court below misconstrued the applicable judicial authorities and misread the pertinent language of the challenged portion of the indictment. Accordingly, the three counts of the indictment dismissed should be reinstated and the trial should proceed on this basis.
 

 Reversed.
 

 [1]
 

 .
 
 See
 
 Kilpatrick,
 
 Death of the English Language,
 
 Washington Star-News, December 20, 1974.
 

 [2]
 

 . As the two related counts, felony murder and armed robbery, depended upon the validity of the robbery count, the court’s ground for dismissing this count was applicable to the others.
 

 [3]
 

 .The section reads:
 

 Whoever by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery, and any person convicted thereof shall suffer imprisonment for not less than two years nor more than fifteen years.
 

 [4]
 

 .According to WEBSTER’S NEW INTERNATIONAL DICTIONARY (2d Ed.1947), the primary meaning of the word is:
 

 To take, and carry away feloniously and, usually, unobserved; to take or appropriate without right or leave, and with intent to keep or make use of wrongfully; as, to
 
 steal
 
 money or another’s goods; . . . (Emphasis in original.)
 

 [5]
 

 . Exodus XX, 15.
 

 [6]
 

 . II. Samuel, XV, 6. This chapter describes the conduct of a disloyal prince in subverting the allegiance of King David’s subjects.
 

 [7]
 

 . From the musical “Sunny” (1925) — “Who?” Music by Jerome Kern. Lyrics by Otto Har-basli and Oscar Hammerstein, II.
 

 [8]
 

 . Emphasis in original.
 

 [9]
 

 . The government appealed the instant case promptly. Nevertheless at oral argument our attention was drawn to a subsequent order by another Superior Court judge dismissing five indictments because the wording of the robbery counts was identical to the one in this case. United States v. Saleh, et al, Super.Ct.Crim. Nos. 59877-74 through 68337-74 (Nov. 5, 1974). In a somewhat unusual opinion issued with such order, this judge, who chose to rule on the motions despite his admitted awareness of the pendency of the government appeal in this court, berated the United States Attorney for using the same form of indictment which the
 
 Neufield
 
 court —then the highest court of the District of Columbia — approved almost 25 years ago. Since
 
 Neufield,
 
 this form in robbery cases has become standardized and no decision of this court has contained the slightest hint of disapproval. Moreover, prior to the effective date of the D.C. Judicial Reorganization Act of 1970, attempts by convicted defendants to persuade the circuit court of appeals for this jurisdiction to hold such indictments fatally defective have failed. Austin v. United States, 134 U.S.App.D.C. 259, 414 F.2d 1155 (1969); Jackson v. United States, 121 U.S.App.D.C. 160, 348 F.2d 772 (1965).
 

 It is not surprising, therefore, that the United States Attorney, rather than acquiescing in the precedent-upsetting ruling in the instant ease, adhered to past practice in the drafting of robbery indictments while the appeal was pending in this court. During this interval the correct procedure for any trial judge with misgivings about the standardized forms would be to defer rulings on pretrial motions posing such issue until this court acts. In short, the problem for trial judges described by the author of the
 
 Saleh
 
 opinion is almost entirely self-created.
 

 [4]
 

 We note that in Morissette v. United States, 342 U.S. 246, 271, 72 S.Ct. 240, 96 L.Ed. 288 (1952), the Supreme Court stated that stealing “means to
 
 take away from one
 
 in lawful possession without right with the
 
 intention to keep wrongfully.”
 
 (Original italics; quoting from Irving Trust Co. v. Leff, 253 N.Y. 359, 364, 171 N.E. 569, 571 (1930).) In a case where the defendant asserts as a defense a claim of right to the goods, or lack of knowledge that they belonged to the other person, or lack of intent to keep the goods, we presume that a court would liberally grant a bill of particulars to clarify the word “stole.”
 

 [10]
 

 . The court below as well as the author of the
 
 Saleh
 
 opinion rely in part on this ambiguous directive, but we doubt very much, in view of the literary style of this judge’s writings in other cases, that he intended the United States Attorney to burden future indictments with repetitious surplusage. In any event, such views are certainly not binding upon any prosecution commenced in the Superior Court under a statute of local application. D.C.Code 1973, § 11-102.
 

 [11]
 

 . This language — an excerpt from Russell v. United States, 369 U.S. 749, 763-64, 82 S. Ct. 1038, 8 L.Ed.2d 240 (1962) — was quoted in the lower court’s memorandum as the reason for this requirement.