**Benjamin I. NICHOLS, Appellant,**

v.

**UNITED STATES, Appellee.**

**John H. WILSON, a/k/a John H. L. Wilson, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 7361, 7474.**

District of Columbia Court of Appeals.

Argued April 10, 1974.

Decided Aug. 14, 1975.

John H. Pickering, Washington, D. C., appointed by this court, for appellant Nichols. Douglas G. Thompson, Jr., and Daniel D. Polsby, Washington, D. C., also were on the briefs.

Gerald M. Kane, Washington, D. C., appointed by this court, for appellant Wilson.

Joel DuBoff, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., and John A. Terry and Peter O. Mueller, Asst. U. S. Attys., were on the brief, for appellee.

Before GALLAGHER, YEAGLEY and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellants were found guilty by a jury of the felonies of second-degree burglary, D.C.Code 1973, § 22–1801(b), and the malicious destruction of property "of the value of $200 or more", D.C.Code 1973, § 22–403. Their principal contentions on appeal are (1) that the indictment did not properly charge the felony of malicious destruction of property since it used the term "damage" rather than "value"; (2) that the evidence did not prove that the value of the property involved was $200 or more; and (3) that evidence of the on-the-scene identifications should have been excluded for undue suggestivity.[1] We affirm.

I

On the night in question, intruders, using an ax, chopped a hole in the roof of the P–X Liquor Store at 502 – 19th Street, N. W. They lowered themselves into a rear storage area of the one-story building. They attempted to break through a door separating them from the front part of the store, which contained the cash register, the safe, and some of the store's more valuable inventory. Their efforts triggered a burglary alarm, and they fled.

Their flight was observed by several students from the windows of a George Washington University dormitory located adjacent to the parking lot of the liquor store. Two students testified. One of them, David Konick, said that he first noticed activity outside the liquor store around 9:30 p. m., roughly a half-hour before the alarm went off. As he watched from an eighth-floor hall window, Konick saw a large Negro male carry an object with a long handle from the liquor store to a car parked below the window. Konick "assumed he was a cleanup man." The man opened the car door and carefully placed the object inside. The car's interior light illuminated the driver and Konick noticed that he was wearing a blue uniform of the type worn by a gas station attendant or mechanic. Konick was not sure whether he saw a third person in the back seat at that time. He then went back to his room.

At about 10 p. m., Konick returned to the window. He had been gazing out for a few minutes when he heard the burglar alarm ring. He saw two men run from the liquor store. One was small; the other was a large man whom he recognized as the person he had noticed earlier. They got into the same car he had seen previously. He again noticed that the driver was wearing a blue uniform, and this time he definitely could see another person in the back seat. As the car drove away Konick observed that it had District of Columbia license plates, with the next-to-

---

1. We find no merit in appellant Wilson's additional contentions regarding (1) his asserted personal right to conduct voir dire, (2) his asserted right to a polygraph examination to aid the court in sentencing, and (3) the alleged lack of proof as to his specific intent to commit burglary.

last digit being a "1" and the last being either a "1" or a "7". He identified the car as a late model green Thunderbird with a black vinyl roof. Konick telephoned the police, described the car, and reported that it was traveling south on 19th Street toward Constitution Avenue.

The police dispatcher broadcast a lookout for the car. Two or three minutes later, near Constitution Avenue and 12th Street, N.W., an officer stopped a late model green Thunderbird with a black vinyl top and D.C. tag number 906–817. Appellant Nichols was driving. Appellant Wilson was in the front passenger seat, and two juveniles were seated in the back. The officer then received radio notification that another witness (Michael Posner, a student who had watched with binoculars from the seventh floor of the dormitory) had read the car's license number as 806–817—only one digit different from that on the stopped vehicle.

Appellants and their companions were placed in a patrol wagon and transported to the liquor store. At the scene, Wilson and the two juveniles were asked to stand outside the patrol wagon, while Nichols remained inside. Konick identified Wilson as the big man he had seen carrying an object to the Thunderbird around 9:30 p. m. and as the larger of the two men he later had seen running to the car after the alarm sounded. Konick then was asked to look inside the patrol wagon. He identified the blue uniform Nichols was wearing as being identical to that worn by the driver of the Thunderbird. Posner identified the Thunderbird as the vehicle he had seen leaving the parking lot after the alarm sounded.

Police officers found a shovel and a broken ax inside the rear storage area of the liquor store. The store manager testified at trial that those items did not belong to the store. The government introduced photographs of the liquor store's damaged roof and interior door, and the manager testified that repairing the damage caused by the burglars cost $425.

## II

Appellants contend that the indictment did not charge them sufficiently with the felony of maliciously destroying property "of the value of $200 or more". D.C. Code 1973, § 22–403. We disagree.

The malicious injury count of the indictment was phrased as follows:

On or about October 26, 1972, within the District of Columbia, Benjamin I. Nichols and John H. Wilson, also known as John H. L. Wilson, maliciously did cause injury and destruction to certain property, that is, a store, property of William Pittleman, causing damage in excess of $200.00 to said store.

Appellants' argument rests on the fact that the indictment, by using the phrase "causing damage" instead of "of the value", failed to track § 22–403. The statute provides:

Whoever maliciously injures or breaks or destroys, or attempts to injure or break or destroy, by fire or otherwise, any public or private property, whether real or personal, not his own, of the value of $200 or more, shall be fined not more than $5,000 or shall be imprisoned for not more than ten years, or both, and if the value of the property be less than $200 shall be fined not more than $1,000 or imprisoned for not more than one year, or both.

There are two basic criteria by which the sufficiency of an indictment is measured: (1) Whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and (2) whether the record adequately shows that the defendant may plead a former acquittal or conviction in the event any other proceedings are initiated against him later for a similar offense. *Russell v. United States*, 369 U.S. 749, 763–64, 82 S. Ct. 1038, 8 L.Ed.2d 840 (1962); *see Bush*

*v. United States,* D.C.App., 215 A.2d 853, 855 (1966).

If an indictment does not satisfy the protections set by those criteria, the accused may object to it by motion before trial. Super.Ct.Cr.R. 12(b)(2). If he does not do so, he waives his right to challenge the indictment on appeal unless it is so deficient as to be "totally lacking in the statement of an offense". *Bush v. United States, supra* at 855. If the indictment does state the elements of an offense, however, and merely lacks particularity, the failure to object in the trial court constitutes a waiver "and the defect is deemed cured by the verdict, unless some substantial prejudice is demonstrated." *Ibid.*; *see* D.C.Code 1973, § 11–721(e).

Appellants did not object to the indictment either before or during the trial. Our review, therefore, is limited to determining (1) whether the indictment states the elements of the felony of malicious destruction of property, and (2) if the elements are stated, whether any substantial prejudice resulted to appellants from the indictment's asserted flaw.

The felony of malicious destruction of property has four elements: (1) that the defendant injured or broke or destroyed, or attempted to injure or break or destroy, property; (2) that the property was not the defendant's; (3) that the defendant did so maliciously, that is, with intent to injure or break or destroy the property and for a bad or evil purpose, and not merely negligently or accidentally; and (4) that the property was of a value of $200 or more. Appellants claim that the fourth element was not charged.

This court has not previously defined the "value" element of § 22–403. Its significance is crucial, because the value of the

property involved provides the sole distinction between a felony and a misdemeanor. The punishment and collateral consequences may differ substantially, depending on whether the value is $200 or less. *Cf. Boone v. United States,* D.C.App., 296 A. 2d 449, 450 (1972). *See also Blackledge v. Perry,* 417 U.S. 21, 28 n. 6, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). The legislative history of § 22–403 is silent as to the meaning of the term "value".

We believe "value" should be analyzed by viewing § 22–403 as encompassing two principal types of situations: (1) Cases involving the destruction of an entire item of property, and (2) cases involving injury which falls short of total destruction.[2] We construe "value" in both types of cases as referring to the fair market value of the object or entity involved immediately before the crime occurs. The application of the fair market value concept differs, however, depending on whether injury or total destruction is involved.

Where an item of property has been entirely destroyed, there is little difficulty in applying the normal definition of "fair market value", *i. e.,* the price which a purchaser who is willing but not obliged to buy would pay an owner who is willing but not obliged to sell, considering all the uses to which the property is adapted and might reasonably be applied *See Wentworth v. Air Line Pilots Association,* D.C.App., 336 A.2d 542, 543 n. 1 (1975).

Application of the fair market value concept is more difficult, however, where (1) a portion of a larger whole has been damaged or destroyed, while the larger property itself has not been destroyed, and (2) the damaged portion may be repaired without impairment of the whole's original purpose or utility. The larger whole in this case is the liquor store; the damaged—and subsequently repaired—por-

---

2. Section 22–403 employs the term "break", in addition to "injure" and "destroy". With regard to the meaning of "value", breakage is not a distinct category, but would be sub- sumed by either injury or destruction, depending on whether the property involved was damaged to some extent, or demolished.

tions are the roof and an interior door. We readily could take notice of the fact that the "store" referred to in the indictment has a value exceeding $200. *Cf. United States v. Owens,* D.C.App., 332 A. 2d 752, 754 (1975); *District of Columbia v. Jordan,* D.C.App., 232 A.2d 298, 299 (1967). While the validity of the indictment could be sustained on that basis alone, we choose not to follow such a rationale, for we thereby would create the rule that, for example, causing even fifty cents' damage to part of an object having an overall value greater than $200 would constitute a felony. We do not believe such to have been the intention of Congress.

▆▆▆▆ Neither, in our view, would it be logical to interpret the statute as requiring the cataloging in an indictment of each component part which is damaged or destroyed. In this case, for example, such an approach would necessitate placing a value on multiple items such as roofing paper, pieces of wood, etc. A more sensible approach is wholly consistent with the statute. Where repairable damage or destruction is caused to a portion or portions of a greater whole, the value of the property damaged or destroyed is to be measured by the reasonable cost of the repairs necessitated by the malicious conduct.[3]

In considering the sufficiency of the indictment in this case, we consider it appropriate to give appellants the benefit of any doubt which reasonably may have existed as to the meaning of "value" in § 22–403, since we previously have not defined the term. Applying such a lenient standard of review, we find no reversible error.

▆▆▆▆ "Although it is generally the better practice, [the] elements [of an offense] need not always be set forth *in haec verba.* Indictments 'must be real to include facts which are necessarily implied by the specific allegations made.'" *United States v. Barbato,* 471 F.2d 918, 921 (1st Cir. 1973), *quoting United States v. Silverman,* 430 F.2d 106, 111 (2d Cir. 1970), *cert. denied,* 402 U.S. 953, 91 S.Ct. 1619, 29 L. Ed.2d 123 (1971). A modern concept of criminal pleading, embodied in the trial court's Criminal Rule 7(c), is that an indictment need only contain "a plain, concise and definite written statement of the essential facts constituting the offense charged." *See District of Columbia v. Jordan, supra* at 299. *See also* Fed.R. Crim.P. 7(c). The indictment here met that requirement. *See also Walker v. United States,* 439 F.2d 1114, 1115 (6th Cir. 1971).

The indictment alleged that appellants maliciously caused "injury and destruction to certain property, that is, a store, property of William Pittleman, causing damage in excess of $200.00 to said store." It might better have been phrased somewhat as follows:

> On or about [date], within the District of Columbia [appellants] maliciously caused injury and destruction to portions of a store belonging to [owner], the value of those portions being in excess of $200 as measured by the cost of restoring the store to its condition before said injury and destruction.

---

3. We perceive one type of case in which it would be unjust to measure the value of the damaged portion by the cost of restoration. Such a situation would occur where the total value of the entire item of property involved is less than $200, but the cost of repair would be $200 or more. For example, an old car might have a value of only $150, while the cost of repairing a damaged portion of it could exceed $200. In such a case, the maximum value chargeable should be determined by the overall value of the entire item of property before the damage occurred.

It should be noted that in setting the overall value of the property as the maximum amount which may be charged, we diverge from an analogous civil rule of damages, which generally sets diminution in value of the property involved as the maximum figure. *See, e. g., Smith v. Brooks,* D.C.App., 337 A.2d 493, 494 (1975); *Wentworth v. Air Line Pilots Ass'n, supra* at 544.

The indictment's reference to "damage in excess of $200.00", while not ideally phrased, adequately conveyed the information that the property damaged had a value of $200 or more. In the context of injury to a liquor store, we do not see how the reference to "damage in excess of $200.00" could fail to imply that the value of the property damaged (as measured by the cost of repairs) was more than $200.

█ If appellants had entertained any thought that the store itself might be of some extraordinary type, with a value of less than $200, or that the value of the damaged portions might have been less than $200, they could have moved for a bill of particulars. Super.Ct.Crim.R. 7(f). They did not do so. To be sure, a bill of particulars cannot cure an indictment which omits a material element of the offense. *See United States v. Thomas,* 144 U.S.App.D.C. 44, 47, 444 F.2d 919, 922 (1971). We are not dealing with such an omission here, however. In this case, a bill of particulars would have served only to reinforce the obvious.

For the foregoing reasons, we conclude that the indictment sufficiently delineated the value element of the offense and apprised appellants of the crime with which they were charged. *See United States v. Mason,* 440 F.2d 1293, 1297 (10th Cir.), *cert. denied,* 404 U.S. 883, 92 S.Ct. 219, 30 L.Ed.2d 165 (1971); *cf. United States v. Missler,* 414 F.2d 1293, 1297 (4th Cir. 1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 912, 25 L.Ed.2d 93 (1970). *See also United States v. Owens, supra* at 756.

█ We also must determine whether appellants were prejudiced as a result of the relative imprecision in the phrasing of the indictment. Looking to the purposes which an indictment must serve, *see Russell v. United States, supra* at 763–64, and *Bush v. United States, supra* at 855, we conclude they were not.

With regard to the purpose of informing an accused what he must be prepared to meet, we are satisfied that appellants could not have been misled in any meaningful way. Appellants' trial counsel evidently did not perceive any flaw in the indictment, since they did not object to it (or request a bill of particulars) before trial. Normally, of course, such a failure would preclude raising the issue on appeal. *See e. g., Hall v. United States,* D.C.App., 343 A.2d 35, at 37 (1975). Irrespective of that factor, we see no possibility of substantial prejudice, even in the unlikely eventuality that appellants misinterpreted the indictment. The worst that reasonably might have happened would be that the indictment caused them to believe that the relevant value figure was for the entire store. Such a belief possibly might have caused appellants to forego an argument that the value (repair cost) of the injured or destroyed portions was less than $200 (although no such point is urged on this appeal). But even if they had been misled in this manner, they were not prejudiced, because testimony and photographs in the record show that the cost of repair was well over $200.

We also find no prejudice to appellants with regard to the second principal purpose of an indictment, namely, ensuring that an accused is in no danger of being put in jeopardy a second time for the same offense, but can plead the prior conviction or acquittal in bar of a subsequent prosecution. Appellants have made no showing of any such prejudice. In the unlikely eventuality that they were charged again with the same crimes, the entire record would be available to them to show the offenses involved here. *See Bush v. United States, supra* at 856.

### III

█ Appellants also argue that if we hold—as we do—that the indictment sufficiently charged them with the felony of malicious destruction of property, we should find that the evidence at trial did not prove that the value of the property damaged was $200 or more. We disagree.

As we have stated, the liquor store's manager testified that repairs to the store cost $425. Additionally, the prosecution introduced photographs of the damage to the roof and the interior door. While it is fundamental that the government must prove each element of the crime charged, including the value of the property damaged, *cf. Boone v. United States, supra* at 450, the issue of value adequately was removed from the realm of speculation by the evidence in this case. *Cf. In re J. F. T.,* D.C.App., 320 A.2d 322, 325 (1974). *See also Paige v. United States,* D.C.Mun.App., 183 A.2d 759 (1962).

IV

Appellants further contend that evidence of the on-the-scene identifications by the university student Konick should have been excluded at trial. They argue (1) that the opportunity Konick had to see the persons involved in the burglary was insufficient to justify the subsequent on-the-scene confrontation, and (2) that unduly suggestive procedures were used during the identifications. We cannot agree.

 Appellants assert that an on-the-scene identification is appropriate only where a witness has viewed an offender's face. It undoubtedly is true that face-to-face encounters are involved in most cases where on-the-scene identification evidence is held to be admissible. *See, e. g., Jones v. United States,* D.C.App., 277 A.2d 95 (1971); *Stewart v. United States,* 135 U.S.App.D.C. 274, 418 F.2d 1110 (1969). However, a witness' close observation of facial characteristics is not necessary to warrant such a confrontation. Where a witness has had sufficient opportunity to observe the figure of a person committing a crime, and has a vivid impression of such characteristics as height, build, race, hair style, and clothing, an on-the-scene identification may be appropriate. *See generally Russell v. United States,* 133 U.S.App.D.C. 77, 81, 408 F.2d 1280, 1284, *cert.*

·*denied* 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed. 2d 245 (1969).

 The question is whether under the totality of the circumstances the identification was reliable. *See Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Here, obviously, Konick did not have an opportunity to see the face of the large man outside the liquor store at close range, for he was watching from an eighth-floor window. Nonetheless, the parking lot outside the liquor store was illuminated by both street lights and building lights. Konick did observe the man's general facial features, the cut of his hair, the shape of his head, his race, his height, and his "very broad shouldered" build. Konick also observed that the man was wearing dark pants, a dark pullover shirt, and a dark jacket. He testified that he was "positive" that the person he identified—appellant Wilson—was the large man he had seen earlier. The only difference he noticed was that Wilson had removed his jacket before the identification.

Considering all the circumstances, including the care with which Konick attempted to observe the burglars, the accuracy of his description of the car, the degree of certainty he exhibited at the confrontation, and the fact that only 20 to 25 minutes elapsed between the crime and the identifications, we conclude that the on-the-scene identification procedures were permissible. *See Neil v. Biggers, supra* at 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401.

 Appellants additionally contend that the procedures employed during the confrontations were so unduly suggestive as to require exclusion of the identification evidence. Again, we disagree. Appellant Wilson argues that his confrontation with Konick was unduly suggestive because it occurred in the vicinity of the Thunderbird automobile. This argument overlooks the fact that Konick identified Wilson as the big man he had seen from among a group of three persons. While the proximity of

the Thunderbird may have been suggestive, it reflected equally on each person in the group and did not result in undue suggestiveness. We note also that while Konick did positively identify Wilson, he told the officers that he could not state definitely that either of the others was the second man he had seen running from the store. The confrontation with Wilson was not conducted in a manner which requires exclusion of that identification evidence.

■ Appellant Nichols argues that the identification of his clothes as identical to those worn by the Thunderbird's driver should have been excluded because he was alone in the patrol wagon when viewed by Konick. We reject this argument also. Konick was unable to tell police whether Nichols actually was the person he had seen driving the Thunderbird, because he had seen only the driver's clothes. Konick was positive, however, that Nichols' uniform was like that worn by the driver. He testified that it was the same shade of blue and had the same style pockets and snaps. Konick testified that "if it was not the same one, it was an identical one."

■ Unquestionably a confrontation with a single suspect in a police wagon can have suggestive overtones, because it gives a viewer the impression that police think they have apprehended the perpetrator. *See Russell v. United States, supra* at 81, 408 F.2d at 1284. Yet prompt confrontations also promote fairness and justice, because they enable a witness to view a suspect before the witness' mental picture of the offender fades, and because they may result in the expeditious release of innocent persons. *Ibid.; see United States v. Hines,* 147 U.S.App.D.C. 249, 259–61, 455 F.2d 1317, 1327–29 (1971), *cert. denied,* 406 U.S. 969, 975, 92 S.Ct. 2427, 32 L.Ed.2d 675 (1972). These competing considerations must be balanced in each case. *See id., Jones v. United States, supra* at 97–98.

Konick had two opportunities to view the driver's clothes while the Thunderbird was outside the liquor store, both before and after the alarm was activated; the identification occurred only 20 to 25 minutes after the second time Konick saw the clothes; and Konick was positive in his identification of the clothing as identical to that worn by the driver. Additionally, we note again that Konick was identifying Nichols' uniform, rather than Nichols himself. Konick's identification was not direct evidence of Nichols' presence at the scene, but rather was circumstantial evidence from which—along with other evidence—his presence might be inferred. Counsel for Nichols was free to argue to the jury, for example, that the uniform was of a common type, and that evidence of the identification therefore was entitled to little weight. Under the circumstances, we conclude that the procedure followed in the identification of Nichols' clothing was not unduly suggestive and that evidence of the identification properly was admitted at trial. *Cf. Young v. United States,* 132 U.S.App. D.C. 257, 258, 407 F.2d 720, 721, *cert. denied,* 394 U.S. 1007, 89 S.Ct. 1608, 22 L. Ed.2d 786 (1969). *See also United States v. Gaines,* 450 F.2d 186, 195–96 (3d Cir. 1971), *cert. denied,* 405 U.S. 927, 92 S.Ct. 978, 30 L.Ed.2d 801 (1972).

The evidence of appellants' guilt was overwhelming. No reversible error having occurred, the judgments appealed from are affirmed.

*Affirmed.*

GALLAGHER, Associate Judge (concurring and dissenting):

I concur in the affirmance of the convictions of second degree burglary but dissent on the convictions for malicious destruction of property for failure of the indictment to state an offense.

On the federal side it was recognized long ago that it was unreasonable, if not archaic, to center the offense of malicious destruction of property on the value of the

**346** ■■■■■■■■■■■■■■■■■■■■

property injured rather than on the amount of the damage done to the property. In 1948, Congress amended the United States Code counterpart statute to effect this result. The federal statute originally read:

> Whoever . . . shall willfully injure or commit any depredation against, any property of the United States . . . shall be punished as follows: *If the value of such property exceeds the sum of $50, by a fine of not more than $10,000 or imprisonment for not more than ten years, or both; if the value of such property* does not exceed the sum of $50, by a fine of not more than $1,000 or by imprisonment in a jail for not more than one year, or both. Value, as used in this section, shall mean market value or cost price, either wholesale or retail, which ever shall be the greater. 18 U.S.C. § 82 (1940). (Emphasis added.)

As amended to conform with modern reality, the statute in pertinent part now reads:

> Whoever willfully injures or commits any depredation against any property of the United States, . . . shall be punished as follows: *If the damage to such property* exceeds the sum of $100, by a fine of not more than $10,000 or imprisonment for not more than ten years, or both; *if the damage to such property* does not exceed the sum of $100, by a fine of not more than $1,000 or by imprisonment for not more than one year, or both. 18 U.S.C. § 1361 (1970). (Emphasis added.)

Thus the current federal statute now keys the offense, and the severity of it, to the damage done to the property—as did the indictment in the instant case.

It seems to me that here the disparity between the indictment and the statute is to a degree not permitting a court reasonably to construe it as the majority does. While the indictment would charge an offense under a statute reading as we agree it should read, it does not do so under the

statute as it now stands in its antiquated form. But this is a matter for the legislature and not the court. I find the stretch too far for judicial construction.