**Jimmy PEARSALL, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 98–CF–317, 98–CO–1225.**

District of Columbia Court of Appeals.

Argued June 19, 2001.

Decided Dec. 19, 2002.

---

M. Elizabeth Kent, Washington, DC, appointed by the court, for appellant.

Valinda Jones, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher and

Peter R. Zeidenberg, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and TERRY and REID, Associate Judges.

WAGNER, Chief Judge:

Following a jury trial, appellant, Jimmy Pearsall, was convicted of conspiracy to commit armed robbery (D.C.Code §§ 22–2901,[1] –3202[2] (1996)), second-degree burglary while armed (D.C.Code §§ 22–1801(b),[3] –3202) (1996), kidnaping while armed (D.C.Code §§ 22–1801,–3202) (1996); attempted armed robbery, as a lesser included offense of armed robbery (D.C.Code §§ 22–2901, –3202) (1996), first-degree felony murder while armed (D.C.Code §§ 22–2401,[4] –3202) (1996), carrying a pistol without a license ("CPWL") (D.C.Code § 22–3204(a)[5] (1996)), and possession of a firearm during the commission of a crime of violence or dangerous offense ("PFCV") (D.C.Code § 22–3204(b) (1996)).[6] He argues that his conviction of conspiracy must be vacated because it is barred by a criminal law doctrine known as Wharton's Rule, an exception to the general principle that a conspiracy and the substantive offense which is its object are discrete crimes for which separate punishments may be imposed. He also contends that the conspiracy count of the indictment was defective, that the evidence was insufficient to support his conviction of armed

kidnaping and that the trial court erred in denying, without a hearing, his motion to vacate his convictions pursuant to D.C.Code § 23–110. We hold that Wharton's Rule does not apply, and hence does not require the dismissal of the conspiracy charge in this case. Further, finding no other reversible error, we affirm.

### I.

Israel Jones was fatally shot in the head in his apartment on Chesapeake Street, S.W. Keith Barnes, who entered a plea of guilty to second-degree murder while armed and conspiracy to commit armed robbery in connection with Jones' murder, testified at Pearsall's trial. According to Barnes' testimony, on the evening of the murder, April 11, 1996, he, appellant, Carpenter and Mitchell were together when Carpenter suggested that they rob Jones, whom Carpenter had seen selling drugs earlier that day. Barnes testified that they all agreed with Carpenter's plan and that the four of them drove to Chesapeake Street to look for Jones. Barnes testified that he was armed with a .38 revolver; appellant had a .357 revolver; and Carpenter had a semi-automatic pistol. When they arrived at Jones' apartment, no one was there, and Carpenter told appellant and Mitchell to go to South Capitol Street to look for Jones. Barnes testified that meanwhile, he kicked in the door to Jones' apartment, and he and Carpenter searched

1. D.C.Code § 22–2901 has been recodified as § 22–2801 (2001).

2. D.C.Code § 22–3202 has been recodified as § 22–4502 (2001).

3. D.C.Code § 22–1801 has been recodified as § 22–801 (2001).

4. D.C.Code § 22–2401 has been recodified as § 22–2101 (2001).

5. D.C.Code § 22–3204 has been recodified as § 22–4504 (2001).

6. Appellant was charged originally with two co-defendants, James Carpenter and Theo Mitchell. The trial court granted appellant's unopposed motion to sever, and he was tried separately. The trial court merged the attempted armed robbery conviction and the related felony-murder conviction, and sentenced appellant to consecutive sentences on the remaining counts.

it for drugs and money. Barnes testified that when appellant and Mitchell returned to the apartment with Jones, appellant had a gun in his hand, and Jones looked scared. He testified that Jones was taken into the bedroom, and Carpenter demanded his money. At some point, Carpenter took appellant's .357 revolver and put it in Jones' mouth. Barnes testified that he heard a shot from the bedroom a few minutes after he and Mitchell left the bedroom to search the living room. Barnes testified that he ran into the bedroom where Jones was lying on his back near the closet. He testified that he and the other three men left the apartment through the bedroom window.

Jones' sister, Quiovalee Jones, testified about events which occurred shortly before the shooting. She testified that appellant and Mitchell were looking for Jones and found him. She said that as she and appellant walked behind Mitchell and her brother, she overheard Mitchell tell her brother, "If you don't come with us, it's going to be the Fourth of July out here . . . ." She testified that her brother said that he did not want to go to see Carpenter. Only after Jones' friend, James Young, agreed to accompany Jones and the other men did Jones get into a car with appellant and Mitchell. James Young testified and corroborated Ms. Jones' testimony about Jones agreeing to get in the car if Young came along. Young also testified that after driving a short distance, Mitchell pulled over and ordered him out of the car, while appellant, who was holding a gun, placed his arm around Jones' neck.

Following his arrest, appellant gave a videotaped statement to the police which the jury viewed at trial. In his statement, appellant admitted that he agreed with Carpenter, Mitchell and Barnes to rob Jones and that Carpenter gave him a .357 revolver to use. Appellant also stated he

and Mitchell found Jones on South Capitol Street and that Jones did not want to get into the car with them; however, after he reassured Jones' sister that her brother would be all right, Jones went along. Appellant said that Young was ordered out of the car and that Mitchell told Young "we got to handle our business." Appellant also recounted in his statement that when they were inside Jones' apartment, Carpenter was demanding money from Jones in the bedroom, and he was facing the living room, when he heard a loud noise, turned around and saw Jones fall. He also said that he heard Carpenter say that he shot Jones.

At trial, appellant provided a different account of the events that evening. He admitted that he rode with Carpenter, Barnes and Mitchell to Jones' apartment and that he went to get Jones, who was not at home. However, appellant testified that he thought the other men were just going to pick up money that Jones owed them and that he stayed in the car when Carpenter and Barnes went inside. Appellant described the ride back to Jones' apartment as friendly, and he said that no one had a gun. He also testified that when they returned to Jones' apartment, only Jones and Mitchell went inside and that he stayed in the car for about ten minutes and then left. Appellant explained that he gave the statement to the police because they would not believe him, and they told him to go along with what the others had said about the murder. However, appellant acknowledged on cross-examination that the police did not threaten him and that he had consulted with his mother and uncle before giving the statement.

## II.

Appellant argues that his conviction for conspiracy to commit armed robbery vio-

lates Wharton's Rule, since the object of the conspiracy and overt acts in furtherance thereof largely duplicate the substantive counts for which he was convicted. He also contends that the conspiracy count of the indictment is poorly drafted and defective because it is superfluous, and the alleged conspiracy was of extremely short duration. The government argues preliminarily that these claims are barred procedurally because appellant failed to challenge the indictment before trial as required by Super. Ct.Crim. R. 12(b). Further, the government contends that no law prohibits separate convictions and consecutive sentences for conspiracy to commit armed robbery and attempted armed robbery.

## A. *Timeliness of the Claim*

 With limited exceptions, defenses and objections based on defects in the indictment must be raised prior to trial in a pre-trial motion. Super. Ct.Crim. R. 12(b)(2).[7] Failure to raise such an objection prior to trial constitutes a waiver of the objection, "but the Court for cause shown may grant relief from the waiver." Super. Ct.Crim. R. 12(d). A defendant who fails to object to an error in an indictment in a pre-trial motion waives the right to challenge the indictment on appeal unless it is so deficient as to be " 'totally lacking in the statement of offense.' " *Nichols v. United States,* 343 A.2d 336, 341 (D.C.1975) (quoting *Bush v. United States,* 215 A.2d 853, 855 (D.C.1966)). When no objection is made during trial, our review is limited to determining (1) whether the indictment sets forth the elements of the offense, and (2) if so, whether the claimed flaw prejudiced the defense. *Nichols,* 343 A.2d at 341.

In this case, appellant acknowledges that he did not raise a challenge to the indictment prior to trial. Nevertheless, he argues on appeal that the conspiracy count was poorly drafted and "should have been stricken as bizarre, superfluous, and violative of at least the spirit of the Wharton'[s] Rule." [8] Setting aside for a moment appellant's claim based upon Wharton's Rule, we consider whether he has waived his other challenges to the indictment. These challenges include that the conspiracy count does not reference the conspiracy statute, D.C.Code § 22–105a [9] (1996), charging him only with conspiring with Carpenter and Mitchell "to commit criminal offenses" and citing the armed robbery statutes, D.C.Code §§ 22–2901, –3202, with the object of the conspiracy being the armed robbery of Israel Jones.[10] These

---

7. Super. Ct.Crim. R. 12(b)(2) provides that certain defenses and objections "must be raised before the trial," including:

 Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the Court or to charge an offense which objections shall be noticed by the Court at any time during the pendency of the proceedings); ...

8. Appellant also argues that the conspiracy charge is invalid because the agreement and the alleged overt acts occurred within a couple of hours. However, D.C.Code § 22–105a (b) does not require that the agreement be in place for any specified length of time, and

appellant cites no authority supporting this contention.

9. D.C.Code § 22–105a has been recodified as § 22–1805a.

10. Count Five of the indictment reads as follows:

 On or about April 11, 1996, within the District of Columbia, James Carpenter, Jr., also known as Rat, Jimmy Pearsall, also known as Jimbo, Theo Mitchell and others known and unknown to the grand jury did unlawfully, willfully and knowingly conspire and agree together and with each other to commit criminal offenses in the District of Columbia in violation of Title 22

challenges are defects in the indictment within the meaning of Super. Ct. R. 12(b)(2) which are waived under Super. Ct. R. 12(d) if not raised prior to trial. *See United States v. Weathers,* 337 U.S.App. D.C. 362, 366–67, 186 F.3d 948, 952–53 (1999), *cert. denied,* 529 U.S. 1005, 120 S.Ct. 1272, 146 L.Ed.2d 221 (2000). Appellant seems to concede this, but argues that he has shown cause for relief from any waiver pursuant to Rule 12(d). As cause for the default, appellant argues that the trial court expressed concern about the way that the indictment was drafted, and his trial counsel, whose effectiveness he challenges, "was not at the top of his form." Essentially, appellant's claim is that his trial counsel's failure to challenge the indictment constituted ineffective assistance of counsel and cause for failure to raise the claim earlier. Assuming, without deciding, that appellant has met the requirements to show cause and avoid the waiver, we conclude that appellant has shown no prejudice which would warrant reversal.

■■■■ The sufficiency of an indictment is determined by "(1) [w]hether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and (2) whether the record adequately shows that the defendant may plead a former acquittal or conviction in the event any other proceedings are initiated against him later for a similar offense." *Nichols, supra,* 343 A.2d at 340 (citing *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)). If this standard is met, that the indictment could have been made more definite and certain is not material. *Roberts v. United States,* 752 A.2d 583, 587 (D.C.2000), *cert. denied,* 532 U.S. 1044, 121 S.Ct. 2012, 149 L.Ed.2d 1013 (2001) (citing *Hagner v. United States,* 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932)). Here, the indictment adequately informed appellant of the conspiracy charge he faced and protected him from future prosecution for that offense.

The elements of the crime of conspiracy to commit robbery are that: (1) two or more persons formed an agreement to commit a robbery; (2) the defendant knowingly participated in the conspiracy with the intent to commit the offense; and (3) at least one person involved in the conspiracy committed one of the charged overt acts. *Robinson v. United States,* 608 A.2d 115, 116 (D.C.1992) (citing Criminal Jury Instructions for the District of Columbia, No. 4.93 (4th ed.1993)); *see also United States v. Treadwell,* 245 U.S.App. D.C. 257, 263, 760 F.2d 327, 333 (1985), *cert. denied,* 474 U.S. 1064, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986). The indictment provided fair notice of the conspiracy charge. It specified each of these elements. As to the first and second ele-

of the District of Columbia Code, Sections 2901 and 3202.

*OBJECT OF THE CONSPIRACY*

The object of the conspiracy was for James Carpenter, Jr., also known as Rat, Jimmy Pearsall, also known as Jimbo, and Theo Mitchell to steal money and other property from the immediate actual possession of Israel Jones, while armed with a pistol, by force and violence, against resistance, and by putting their victim in fear.

The indictment then described various overt acts undertaken in furtherance of the conspiracy. These included that appellant, Carpenter and Mitchell: (1) met and agreed to drive to Chesapeake Street to rob Israel Jones; (2) armed themselves for the purpose of committing the offense; (3) traveled by car to the area agreed upon to find Jones and rob him; and (4) broke into Jones' residence. The indictment also alleged as an overt act that appellant and Mitchell forced Jones to ride with them to the apartment for the purpose of carrying out the robbery.

ments, it stated that appellant, Carpenter and Mitchell knowingly and willfully conspired and agreed to commit together criminal offenses in violation of D.C.Code §§ 22–2901, –3202, the armed robbery statutes. The indictment specified that the object of the conspiracy was to rob Israel Jones while armed. Since that was the only armed robbery specified, the reference to criminal offenses in the plural was not misleading. The indictment also lists various overt acts which the named conspirators, including appellant, were alleged to have committed. These overt acts included arming themselves in preparation for committing the armed robbery, searching out the intended victim, Israel Jones, breaking into the victim's apartment, and forcing Jones to ride to his apartment with them for the purpose of committing the armed robbery. Although the indictment made no reference to D.C.Code § 22–105a, "Conspiracy to Commit Crime," it alleged a conspiracy by its terms. Our rules provide that an "[e]rror in the citation or its omission shall not be ground[s] for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to the defendant's prejudice." Super. Ct.Crim. R. 7(c). Appellant has neither alleged nor established any prejudice resulting from the omission of the citation to § 22–105a.

■ A common sense construction must be given to an indictment. *Craig v. United States*, 490 A.2d 1173, 1176 (D.C. 1985). Read as a whole, the indictment in this case apprised appellant of the conspiracy charge he faced and stated it sufficiently to avoid any future prosecution for the same offense. *See Nichols, supra,* 343 A.2d at 340 (citing *Russell, supra,* 369 U.S. at 763–64, 82 S.Ct. 1038). Even if defective, an indictment which adequately protects these interests of fair notice of the charges and avoidance of future prosecutions will not be dismissed. *Craig,* 490 A.2d at 1176 (citations omitted).

### B. *Wharton's Rule*

■ Appellant argues that his conspiracy conviction must be vacated because it violates Wharton's Rule in that the conspiratorial object and overt acts duplicate the substantive counts for which Pearsall was convicted on an aiding and abetting theory. He recognizes that generally "the conspiracy to commit an offense and the subsequent commission of that crime normally do not merge into a single punishable act." *Iannelli v. United States,* 420 U.S. 770, 777, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). The essential element of conspiracy is the agreement to commit an unlawful act, which distinguishes it from other substantive offenses and aiding and abetting that do not require proof of an agreement. *Id.* at 777 n. 10, 95 S.Ct. 1284 (citing *Pereira v. United States,* 347 U.S. 1, 11–12, 74 S.Ct. 358, 98 L.Ed. 435 (1954)) (other citations omitted); *Robinson, supra,* 608 A.2d at 116. " 'Only if the substantive offense and the conspiracy are identical does a conviction for both constitute double jeopardy.' " *United States v. Boyle,* 157 U.S.App. D.C. 166, 177, 482 F.2d 755, 766, *cert. denied,* 414 U.S. 1076, 94 S.Ct. 593, 38 L.Ed.2d 483 (1973) (quoting *Pereira,* 347 U.S. at 11, 74 S.Ct. 358). In *Robinson,* this court, rejecting a claim of merger, upheld convictions for both conspiracy to commit robbery and attempted robbery, the lesser-included offense of robbery that was the object of the conspiracy. *Robinson,* 608 A.2d at 116. However, we did not consider in *Robinson,* nor does it appear that this court has ever considered such a challenge based upon Wharton's Rule. *Id.*

■ Wharton's Rule is an "exception to the general principle that a conspir-

acy and the substantive offense that is its immediate end" are discrete crimes for which separate sanctions may be imposed. *Iannelli, supra,* 420 U.S. at 781–82, 95 S.Ct. 1284. Under Wharton's Rule, an agreement by two people to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to require necessarily the participation of two people for its commission. *Id.* at 782, 95 S.Ct. 1284. For example, Wharton's Rule applies to offenses such as adultery, incest, bigamy, and duelling that require concerted criminal activity, a plurality of criminal agents and is essentially an aid to the determination of legislative intent. *Id.* "Only where it is *impossible under any circumstances* to commit the substantive offense without cooperative action, does Wharton's Rule bar convictions for both the substantive offense and conspiracy to commit that same offense." *United States v. Payan,* 992 F.2d 1387, 1390 (5th Cir.1993) (citing *Gebardi v. United States,* 287 U.S. 112, 121–22, 53 S.Ct. 35, 77 L.Ed. 206 (1932)) (emphasis in the original).[11]

In determining whether more than one person is necessary to commit the offense, it is recognized that "[a] participant is 'necessary' to the commission of a crime, for purposes of merging substantive and conspiracy counts, if the substantive statute requires the [participant's] existence as an abstract legal element of the crime." *Boyle, supra,* 157 U.S.App. D.C. at 178, 482 F.2d at 767. In the present case, it was entirely possible for appellant to commit the offense of armed robbery of Israel Jones without the participation of anyone else. Although armed robbery may be easier with the assistance of others, such assistance is not necessary to commit the offense. Armed robbery does not require proof that there was more than the one actor. Since the focus of a Wharton's Rule inquiry is on the statutory elements, rather than the facts proved at trial, that the evidence showed several persons participated in the armed robbery does not make the rule applicable. *Payan, supra,* 992 F.2d at 1390 (citing *Iannelli, supra,* 420 U.S. at 780, 95 S.Ct. 1284).

The crimes that traditionally fall under Wharton's Rule share three characteristics:

[1] [t]he parties to the agreement are the only persons who participate in commission of the substantive offense .... [2] the immediate consequences of the crime rest on the parties themselves rather than on society at large .... and [3] the agreement that attends the substantive offense does not appear likely to pose the distinct kinds of threats to society that the law of conspiracy seeks to avert.

*Iannelli, supra,* 420 U.S. at 783–84, 95 S.Ct. 1284 (internal citations omitted). Considering these factors against the facts of this case, the offenses do not meet the test. Even assuming the first characteristic were satisfied (considering that appellant, Barnes, Carpenter, and Mitchell were parties to the conspiratorial agreement and the sole participants in the armed robbery of Jones), the second and third characteristics are not met. Specifically, armed robbery is inherently a crime against society at large because of the apprehension of fear and violence that it naturally creates against those being robbed. In addition, the agreement to commit armed robbery does in fact pose the distinct kind of threat to society that

---

11. Even if the rule applies, initial dismissal of the conspiracy count is not required because the purpose of the rule is avoidance of dual punishment. *Iannelli, supra,* 420 U.S. at 786 n. 18, 95 S.Ct. 1284.

the law of conspiracy seeks to prevent. *See Payan, supra,* 992 F.2d at 1390 (collective criminal activity "increases the chances that the criminal objective will be attained, decreases the chances that the involved individuals will abandon the criminal path, makes larger criminal objective attainable, and increases the probability that crimes unrelated to the original purpose for which the group was formed will be committed") (citing *Iannelli,* 420 U.S. at 778, 95 S.Ct. 1284). Wharton's Rule does not preclude conviction in a single trial of conspiracy to commit armed robbery and the substantive offense of armed robbery or its lesser-included offense of attempted armed robbery.[12]

### III.

Appellant argues that there was insufficient evidence at trial to prove beyond a reasonable doubt that he kidnaped the decedent while armed and with the intent to rob or steal his property. Specifically, he contends that the evidence showed only that the "automobile ride was merely a friendly foray, at least with respect to [his] actions and intentions vis a' vis [the decedent]."

 In weighing a claim of evidentiary insufficiency, this court must "view the evidence in the light most favorable to the government, draw all reasonable inferences from that evidence, and defer to the jury the right to weigh the credibility of witnesses." *Marshall v. United States,* 623 A.2d 551, 557 (D.C.1992) (citing *Wells v. United States,* 515 A.2d 1108, 1111 (D.C. 1986)). We will reverse a conviction for insufficiency of the evidence "only where there is no evidence upon which a reasonable mind could infer guilt beyond a reasonable doubt." *Head v. United States,*

451 A.2d 615, 622 (D.C.1982), *cert. denied,* 513 U.S. 854, 115 S.Ct. 156, 130 L.Ed.2d 95 (1994) (citations omitted).

 In order to prove armed kidnaping, the government must prove beyond a reasonable doubt that appellant, while armed, seized or detained the victim, among other elements. D.C.Code §§ 22–2901, –3202; *Head, supra,* 451 A.2d at 624. "The involuntary nature of the seizure and detention is the essence of the crime of kidnaping." *Id.* (citation omitted). To support his argument that the evidence was insufficient to prove that he seized Jones and detained him against his will, appellant relies on this court's opinions in *Head, supra,* 451 A.2d at 615 and *Smothers v. United States,* 403 A.2d 306 (D.C. 1979), where we reversed armed kidnaping convictions because the evidence failed to establish the seizure and detention.

In *Head,* the defendant was convicted of multiple felonies, including armed kidnaping, arising out of the shooting deaths of two gas station employees. *Head, supra,* 451 A.2d at 618–19. The evidence showed that the two employees had been on duty the night before they were murdered. The body of one of the men was found the next morning in Fort Dupont Park, and the body of the other was located on the playground of Kelly Miller School. *Id.* at 619. Evidence showed that both men had been shot in the area where their bodies were found. *Id.* Since the gas station had been locked, and there was no sign of a struggle at the station or in the victim's car, this court concluded that the evidence was insufficient to show that the defendant had taken the victims from one place to another against their will, and reversed the armed kidnaping convictions. *Id.*

---

12. Appellant argues that it is unjust to allow the convictions to stand. However, we have no basis to ignore the lawfulness of his con-

victions under the law as it now stands. *See Boyle, supra,* 157 U.S.App. D.C. at 179, 482 F.2d at 768.

Similarly, in *Smothers, supra,* we found that the evidence was insufficient to support an inference that the murder victim was taken from one place to another against her will and reversed convictions of kidnaping, armed kidnaping and felony-murder (kidnaping). *Smothers, supra,* 403 A.2d at 313. The victim, who had left work and gone shopping at Iverson Mall, was found murdered behind St. Elizabeths Hospital. *Id.* at 308. There were no signs of a struggle in her car, and medical evidence established that she suffered all of her injuries immediately prior to her death. *Id.*

■ The present case is factually distinguishable from both *Smothers* and *Head.* Here, unlike those cases, there was evidence that appellant and his companion took Jones from one place to another against his will. Both appellant and Barnes stated that appellant was armed with a .357 revolver when the four went to Chesapeake Street to look for Jones and when appellant and Mitchell returned to Chesapeake Street with Jones. Appellant stated that when he and Mitchell reached South Capitol Street, Mitchell approached Jones and was talking to him, but that Jones "still didn't want, didn't want to get in the car" with appellant and Mitchell. Jones' sister testified that while on South Capitol Street, she overhead Mitchell say to Jones " if you don't come with us, it's going to be the Fourth of July out here." A jury could find that this statement was coercive in nature. Ms. Jones also testified that Jones repeatedly stated that he did not want to go to see Carpenter about a gun and that Mitchell then replied to Jones "we got one here, you know." In addition, after appellant, Mitchell, Jones, and Young got into the car, Young, Jones' friend, was ordered out of the car, and appellant pulled a gun out of his jacket and put his arm around Jones' neck. Jones

appeared to be frightened when he arrived at the apartment where the men proceeded with their felonious plan to rob him and killed him in the process. Viewing the evidence, both direct and circumstantial, in the light most favorable to the government, as we must, we conclude that it was sufficient to support a finding that appellant seized and detained Jones and took him to his apartment against his will.

**IV.**

Finally, appellant argues that the trial court erred in denying without a hearing his *pro se* motion, as supplemented by counsel, pursuant to D.C.Code § 23–110 alleging ineffective assistance of counsel. The government argues that no hearing was required because appellant's claims were vague, conclusory, and unsupported by any factual allegations, and therefore, the trial court properly denied the motion.

■ To prevail on a § 23–110 motion, the defendant must "allege with particularity those facts and circumstances as would demonstrate the allegations of ineffectiveness." *Ellerbe v. United States,* 545 A.2d 1197, 1198 (D.C.), *cert. denied,* 488 U.S. 868, 109 S.Ct. 174, 102 L.Ed.2d 144 (1988). Although there is ordinarily a presumption that a defendant is entitled to hearing on a § 23–110 motion asserting a claim of ineffective assistance of counsel, a hearing is not required "when the motion consists of (1) vague and conclusory allegations, (2) palpably incredible claims, or (3) allegations that would merit no relief even if true." *Little v. United States,* 748 A.2d 920, 922 (D.C.2000) (citing *Ready v. United States,* 620 A.2d 233, 234 (D.C.1993)). The decision whether to conduct a hearing on a § 23–110 motion is confined to the sound discretion of the trial court. *Id.* (citations omitted). We review the trial court's decision denying the motion without a hearing for abuse of discretion. *Id.*

By letter dated December 10, 1997, which the trial judge treated as a *pro se* motion alleging ineffective assistance of counsel, appellant stated that his attorney did not: 1) visit him enough before or after his trial; 2) subpoena unnamed witnesses; or 3) sufficiently prepare for trial. After appellant's trial counsel withdrew from the case, appellant's sentencing counsel filed a supplemental § 23–110 motion which incorporated appellant's earlier allegations of ineffective assistance and also alleged that trial counsel failed: 1) to investigate the case adequately; 2) to file unspecified motions; 3) to adequately prepare appellant to testify; or 4) to file post-trial motions. The trial court denied the motion without a hearing, concluding that appellant's allegations of ineffective assistance of counsel were merely conclusory and provided no factual basis for the claim that counsel's performance was deficient. We agree.

In this case, appellant has failed to plead facts establishing deficient trial counsel performance or prejudice within the meaning of *Strickland*. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant has not identified specific facts to support his claim and has stated only in the most conclusory terms that his trial counsel was ineffective. Appellant has not named the witnesses that his counsel allegedly failed to subpoena, nor has he specified the motions that his trial counsel failed to file. Assuming *arguendo* that appellant's trial counsel's representation was deficient, appellant has failed to specify how such deficiency has prejudiced him by affecting the outcome of his trial. *See id.* at 687, 104 S.Ct. 2052 ("the defendant must show that the deficient performance prejudiced the defense").

For the foregoing reasons, the judgment of the trial court hereby is

*Affirmed.*