Donald S. CRAIG, Appellant,

v.

UNITED STATES, Appellee.

No. 84–767.

District of Columbia Court of Appeals.

Argued March 25, 1985.

Decided April 25, 1985.

Jonathan Krinick, appointed by this court, for appellant.

Scott L. Fredericksen, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on brief, for appellee.

Before FERREN, TERRY and ROGERS, Associate Judges.

FERREN, Associate Judge:

A jury convicted appellant of attempted breaking and entering of a parking meter, D.C.Code §§ 22–3427, –103 (1981), and possession of marijuana, *id.* § 33–541 (Supp. 1984). The trial court, sitting without a jury, *see id.* § 16–705(b) (1981), convicted appellant of taking property without right. *Id.* § 22–3816 (Supp.1984). Appellant argues on appeal that: (1) the prosecutor's information charging attempted breaking

and entering of a parking meter was defective, and thus should have been dismissed, for failure to allege that the District of Columbia (or someone other than appellant) owned the meter; (2) the trial court erred in denying appellant's motion for judgment of acquittal on the two parking meter offenses because the government presented insufficient evidence that the District of Columbia (or someone other than appellant) owned the meter, and the trial court improperly took judicial notice of the fact that street parking meters were owned by the District of Columbia; (3) in denying the motion for judgment of acquittal on the parking meter offenses, the court also erred by improperly shifting to appellant the burden of proving that he had a right to enter the parking meter; and (4) the trial court erred in denying appellant's motion for judgment of acquittal on the marijuana offense because the government failed to prove that the "brown weed" recovered from appellant's pocket contained tetrahydrocannabinol (THC), an element of proof required to sustain a conviction under D.C. Code §§ 33–501(3), –541 (Supp.1984).

We affirm appellant's conviction for possession of marijuana but reverse his convictions for attempted breaking and entering of a parking meter and taking property without right. While it is not clear that the trial court shifted to appellant the burden of proving his right to enter the meter, we do agree that the government failed to sustain its burden of presenting sufficient evidence on an essential element of both crimes: that appellant entered the meter and removed money "without right."

### I.

Officer Michael McNeely, on foot patrol near 1300 I Street, N.W., spotted appellant at approximately 8:00 p.m. standing close to a parking meter, with his hand inside an opening in the meter. Officer McNeely approached appellant, who did not notice him, and seized appellant's arm and pulled it from the meter. Appellant had a quarter in his hand. The officer arrested appellant and searched him, recovering eight quarters in one pocket and a manila envelope containing a "brown weed" in another pocket.

The United States Attorney for the District of Columbia issued an information charging appellant with:

ATTEMPTED BREAKING AND ENTERING [A] VENDING MACHINE—in that he attempted to break open, open or enter, without right, a vending machine[,] to wit, [a] parking meter[,] with the specific intent to carry away any part of the machine or anything contained therein, in violation of Section 22–3427, Section 22–103, District of Columbia Code.[1]

Appellant failed to challenge the sufficiency of this information before trial, as required by Super.Ct.Crim.R. 12(b); he waited to move to dismiss the information until after the prosecutor's opening statement to the jury. Appellant's counsel then argued that the information failed to allege an essential element of the crime: that the meter belonged to someone other than appellant. *See United States v. Pendergrast*, 313 A.2d 103 (D.C.1973). The court denied this motion. Later, during the government's case-in-chief, the prosecutor asked Officer McNeely, "Do you know who that parking meter belongs to?" Defense counsel objected on the ground that the answer would be inadmissible hearsay. The court overruled the objection, and Offi-

---

1. D.C.Code § 22–3427 (1981) provides:

   Whoever in the District of Columbia breaks open, opens, or enters, without right, any parking meter, coin telephone, vending machine dispensing goods or services, money changer, or any other device designed to receive currency, with intent to carry away any part of such device or anything contained therein, shall be sentenced to a term of imprisonment of not more than 3 years, or to a fine of not more than $3,000, or both.

   D.C.Code § 22–103 (1981) provides:

   Whoever shall attempt to commit any crime, which attempt is not otherwise made punishable by this title, shall be punished by a fine not exceeding $1,000 or by imprisonment for not more than 1 year, or both.

cer McNeely answered that the parking meter was owned by the D.C. Department of Transportation. At the close of the government's case, defense counsel moved for acquittal on all counts—as to both the parking meter and the marijuana—for the reasons now advanced on appeal. The court denied the motion.

Appellant introduced no evidence. At the conclusion of the trial, the court properly instructed the jury on the elements of the charged offenses (as it had before counsel's opening statements). Specifically, as to the parking meter offense, the court reminded the jury that, in order to convict appellant of attempted breaking and entering, it must find beyond a reasonable doubt that the "Defendant attempted to break open, open or enter a parking meter," that "the device or machine was the property of another," and that "at the time of the entry or breaking, the Defendant acted without right to do so and with the specific intent to carry away anything contained within the machine." The court also "took judicial notice" of the fact that "the parking meters in the District of Columbia are the property of the District of Columbia." As to the marijuana offense, the court instructed the jury (in part) to ascertain "whether or not the material in question is, in fact, cannabis, marijuana."

## II.

■ Appellant now argues that the information was fatally defective for failing to allege ownership of the parking meter by someone other than the accused. In *Pendergrast,* this court affirmed the dismissal of an indictment charging the defendant with breaking and entering a jukebox, since it failed to allege that the jukebox was the property of another. 313 A.2d at 105. We noted that

an indictment performs two significant and constitutionally based functions. First, it must inform the accused of the "nature and cause of the accusation," and, secondly, ... must serve as a guide

by which it may be determined whether, if subsequently charged, a person is twice placed in jeopardy for the same offense.

*Id.* at 103–04 (citing *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)) (footnotes omitted); *accord United States v. Bradford,* 482 A.2d 430, 433 (D.C.1984); *Hsu v. United States,* 392 A.2d 972, 976–77 (D.C.1978). For these reasons, "[i]t is well established that an indictment must contain all the essential elements of the offense charged." *Bradford,* 482 A.2d at 432 (citations omitted). The information here did not directly allege ownership by the District of Columbia (or anyone else) and thus was technically defective.

■ This does not end our inquiry, however, for "[u]ltimately, a court must review a challenge to an indictment in light of the safeguards to a criminal defendant which an indictment is designed to provide." *Id.* at 433. A court must give a common sense construction to an information or indictment. Thus, although technically deficient, an information will not be dismissed if it adequately protects the interests identified in *Pendergrast:* fair notice to the defendant of the charges and avoidance of future prosecution for the same offense. *Hagner v. United States,* 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed.2d 861 (1932); *Hackney v. United States,* 389 A.2d 1336, 1341 (D.C.1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 95 (1979); *Ingram v. United States,* 392 A.2d 505, 506 (D.C.1978) (per curiam). Moreover, we have observed that an information or indictment which is tardily challenged "will be 'liberally construed in favor of validity.'" *Bradford,* 482 A.2d at 433 (citation omitted); *see Hagner,* 285 U.S. at 433.[2] Accordingly, in the absence of demonstrable prejudice, we may not reverse. *Ingram,* 392 A.2d at 507 (citing *Kotteakos v. United States,* 328 U.S. 750, 757, 766, 66 S.Ct. 1239, 1244, 1248, 90 L.Ed. 1557 (1946)) (other citations omitted).

---

**2.** In this regard, we observe that the challenge in *Pendergrast,* upon which appellant relies, was

brought before trial, in accordance with Super. Ct.Crim.R. 12(b). *See* 313 A.2d at 103.

As to fair notice, we conclude that the information sufficiently apprised appellant of the charge he was required to defend. In reaching this conclusion, we may examine the information as a whole. *See Bradford*, 482 A.2d at 434. We note, first, that informations must be read to include facts " 'necessarily implied by the specific allegations made.' " *Nichols v. United States*, 343 A.2d 336, 342 (D.C. 1975) (citations omitted). Defense counsel conceded at trial that all parking meters on public streets within the District of Columbia are owned by the District government.[3] Appellant has never suggested there are parking meters on the streets of the District that are owned by private individuals or institutions. *Pendergrast* is distinguishable on this basis, therefore, since the type of property at issue there, a jukebox, is commonly owned by private individuals. In sum, it is apparent that appellant had actual notice of the nature of the charge.[4]

As to the concern for double jeopardy, we conclude that appellant, as a practical matter, could not be tried twice for attempted breaking and entering of the same parking meter on the same day.[5] The record of this case is sufficiently detailed to preclude a second prosecution for the same offense. *See Russell*, 369 U.S. at 764, 82 S.Ct. at 1047; *Bradford*, 482 A.2d at 434.

We are therefore unable to perceive any prejudice arising out of the failure of the information to allege the District's ownership of the parking meter. In the absence of any real prejudice, and in view of appellant's tardy challenge to the sufficiency of the information, we are persuaded that appellant was not required, unfairly, to defend on the basis of the information presented.

## III.

We are troubled, however, by appellant's next contention. At the close of the government's case, appellant moved for judgment of acquittal on the ground that the government had failed to prove that appellant attempted to break and enter the parking meter "without right," *see* D.C.Code §§ 22–3427 (*supra* note 1), –3816,[6] *i.e.*, that he had no authority, either as an employee or an agent of the District of Columbia, to enter the meter and remove money. The court denied this motion.[7]

The only evidence proffered by the government was the testimony of Officer McNeely. When the prosecutor asked, "Now, to your knowledge, does Mr. Craig

3. For this reason, the trial court did not err in taking judicial notice of the District's ownership. Courts may properly take judicial notice of facts that "a reasonable person with reasonable knowledge of the District of Columbia community would understand." *Gaither v. District of Columbia*, 333 A.2d 57, 59 (D.C.1975). Accordingly, we need not address appellant's contention that the trial court erred in admitting testimony by Officer McNeely that the D.C. Department of Transportation owned the parking meter in question.

4. We also note that the information charging appellant with taking property without right did allege that the parking meter was the property of the District of Columbia government. This bolsters our conclusion that appellant in fact had actual notice of the District's ownership.

5. Appellant suggests that because the information fails to specify the location of the meter or include other identifying information such as serial numbers, the government may "repeatedly try him for [the same] offense." We note,

however, that the record includes photographs of the meter, revealing its location, taken by Officer McNeeley immediately after appellant's arrest and authenticated by the officer at trial.

6. D.C.Code § 22–3816 (Supp.1984) provides:

A person commits the offense of taking property without right if that person takes and carries away the property of another without right to do so. A person convicted of taking property without right shall be fined not more than $300 or imprisoned for not more than 90 days, or both.

7. The court ruled that the question of appellant's authority to enter was an affirmative defense, not an essential element of the offense which the government must prove. This was error. Later, however, the trial court properly instructed the jury that the government had the burden of proving an attempt to break and enter "without right" under § 22–3427 and, we shall assume, also assigned this burden to the government in proving a taking without right under § 22–3816.

work for the District of Columbia?" McNeely replied, over objection, "Not to my knowledge." The prosecutor presented no evidence that Officer McNeely or anyone else had investigated to determine whether, in fact, appellant was authorized to enter parking meters by the District of Columbia government.

■ Both § 22–3427 and § 22–3816 prohibit the acts committed by appellant only if done "without right." The government must therefore prove beyond a reasonable doubt that persons accused of these offenses lacked authority from the rightful owner of the property. *See* Criminal Jury Instructions for the District of Columbia, Nos. 4.45 & 4.68 (3d ed. 1978).

■ Officer McNeely's testimony alone was insufficient to establish appellant's lack of authority beyond a reasonable doubt. McNeely's response—"Not to my knowledge"—may have reflected merely that he did not know whether appellant was authorized to enter the parking meter and remove its contents. It does not necessarily suggest that he had investigated and established appellant's lack of authority. Since the government failed to produce any other evidence on this element, we are unpersuaded that the evidence was sufficient to support a conviction. *See Curley v. United States,* 81 U.S.App.D.C. 389, 392–93, 160 F.2d 229, 232–33, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). Accordingly, we must reverse appellant's two convictions under § 22–3427 and § 22–3816.

### IV.

Finally, appellant contends that, in order to sustain its burden of proving appellant's possession of marijuana, the government was required to prove that the "brown weed" recovered from appellant contained the chemical THC. Appellant further argues that the government's evidence was insufficient to establish THC content. We reject both contentions.

Before 1981, under the Uniform Narcotic Drug Act, D.C.Code §§ 33–401 to –425 (1973), "marijuana" was defined as follows:

> "Cannabis" includes all parts of the plant *Cannabis sativa* L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin, including specifically the drugs known as American hemp, marihuana, Indian hemp or hasheesh, as used in cigarettes or in any other articles, compounds, mixtures, preparations, or products whatsoever, but shall not include the mature stalks of such plant; fiber produced from such stalks; oil or cake made from the seeds of such plant; any compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom); fiber, oil or cake; or the sterilized seed of such plant which is incapable of germination.

*Id.* § 401(m). The statute, by its terms, proscribed only one of several species of cannabis—Cannabis sativa L. A literal reading of § 401(m), therefore, produced the anomalous result that possession of cannabis with narcotic properties, other than Cannabis sativa L., appeared to be lawful.

District of Columbia courts, unwilling to accept the view that Congress intended such a result, declined to construe the statute so narrowly. In *United States v. Johnson,* 333 A.2d 393, 394–95 (D.C.1975) (per curiam), this court reversed the dismissal of an information charging possession of marijuana but failing to allege that the marijuana was Cannabis sativa L. We determined that "the legislative history ma[de] clear that (a) there was a Congressional concern over the effect on humans of a chemical (THC) contained in ... the cannabis plant and (b) a Congressional determination to ban *its* manufacture, use and possession." *Id.* at 394–95 (emphasis in original). Accordingly, in order to effectuate perceived congressional intent, this court legitimated prosecutions for possession of all species of cannabis, provided the government proved THC content. *See, e.g., Blakeney v. United States,* 366 A.2d 447, 449 (D.C.1976); *Thomas v. United*

*States,* 352 A.2d 390, 392 (D.C.1976) (per curiam).

In 1981, the Council of the District of Columbia adopted the District of Columbia Uniform Controlled Substances Act of 1981, amending the old Uniform Drug Act. D.C.Law 4–29 (codified at D.C.Code §§ 33–501 to –567 (Supp.1984)). The new Act, responding to this court's concern, redefined marijuana as follows:

> "Marijuana" includes the leaves, stems, flowers, and seeds of all species of the plant genus Cannabis, whether growing or not. The term "marijuana" does not include the resin extracted from any part of the plant, nor any compound, manufacture, salt, derivative, mixture, or preparation from the resin, including hashish and does not include the mature stalks of the plant, fiber produced from such stalks, oil, or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks, fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination.

D.C.Code § 33–501(3)(A). The new definition makes clear that the Council, recognizing that many species of cannabis contain THC, intended to outlaw them all.

Appellant draws our attention to the fact that the new definition of marijuana excludes from its prohibition the same plant parts—which do not contain THC—as the old definition. He argues that the government is therefore still obligated to demonstrate THC content, in order to prove unlawful possession of prohibited parts of the cannabis plant. From examining the history underlying the new definition of marijuana, however, we believe a more reasonable understanding is that the government was required to prove THC content under the old Act because the old Act criminalized possession only of "Cannabis sativa L." and, to legitimate convictions for possession of other species of cannabis, the government's proof had to cover Congress' expressed concern about THC. The new Act, by proscribing possession of *all* species of marijuana, obviates the need specifically to prove THC content, since a finding that plant material is "marijuana" is tantamount to a finding that the material contains THC. Our conclusion is bolstered by the testimony of the police chemist, who stated that, in determining whether a substance is marijuana, she performs three tests. Two of these specifically test for the presence of THC. *See Blakeney,* 366 A.2d at 448.[8] Implicit in her testimony that she determined the weed was marijuana, therefore, is the finding that the weed contained THC. *See id.* at 448–49.

Appellant nonetheless points to defense counsel's cross-examination of the chemist in which counsel asked her if she "recall[ed] specifically performing the [Duquenois-Levine] test?" The chemist replied that she did not. The chemist further conceded that the lab report summarized only the result of the analyses, without particularizing the tests performed. Appellant suggests that the testimonial and documentary evidence presented were thus insufficient to establish that the weed was "marijuana," containing THC. We disagree. On redirect examination the chemist testified that she performs "approximately fifty or sixty" such analyses per week. In view of her testimony that she normally performs tests to determine THC content and that the brown weed seized from appellant was marijuana, we are not persuaded that the mere fact she could not recall performing one particular test is evidence that the test was not conducted or that the tests she performed did not indentify THC. Accordingly, we affirm appellant's conviction for possession of marijuana.

*Affirmed in part and reversed in part.*

---

8. The three tests are: microscopic examination, the Duquenois-Levine test, and a thin layer chromatography using a THC standard. *See Blakeney v. United States,* 366 A.2d 447, 448 (D.C.1976). "The latter two procedures directly test for THC." *Id.*