**Neville A. JAMES, Appellant,**

v.

**UNITED STATES, Appellee.**

**Robert O. WILLIAMS, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 84–323, 84–384.**

District of Columbia Court of Appeals.

Argued April 8, 1986.

Decided Sept. 8, 1986.

---

Jack Koppelman, Silver Spring, Md., appointed by this court, was on the brief, for appellant James.

Marion E. Baurley, Washington, D.C. appointed by this court, was on the brief, for appellant Williams.

Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Thomas J. Tourish, Jr. and Thomas J. Motley, Asst. U.S. Attys., Washington, D.C. were on the brief, for appellee.

Before FERREN, BELSON and ROGERS, Associate Judges.

ROGERS, Associate Judge:

Appellants James and Williams were convicted by a jury of one count of possession of marijuana with intent to distribute. D.C. Code § 33–541(a)(1) (1985 Supp.). James contends that the trial court committed reversible error by refusing to let him cross-examine his codefendant. Williams contends that plain error occurred when the prosecutor improperly impeached him with a 1981 misdemeanor conviction for threats since the impeachment was not authorized by D.C. Code § 14–305 (1981), and the manner of the impeachment suggested his guilt of the pending offense because of the prior conviction. We agree that the trial court erred in denying James the right to cross-examine Williams and that the impeachment of Williams with his prior threats conviction was improper under the

statute, but hold that the errors were harmless beyond a reasonable doubt. Finding meritless appellants' other contentions, that the trial court erred in accepting their stipulations and admitting two exhibits, we affirm.

## I

On January 28, 1983, Officer Roberts obtained a search warrant for 3132 16th Street, N.W., apartment 702. Prior to executing the search warrant, Roberts and other members of the Fourth District Vice Unit went to apartment 702 on February 3, 1983, for the purpose of purchasing cannabis. Officers Dickens, Robinson and Richmond remained outside while Roberts made the purchase. Roberts testified that he placed a five-dollar bill inside the peephole of the apartment and received from a person he could not see a small piece of tightly wrapped brown paper. He left the building. A field test of the contents of the brown paper was positive for marijuana. Between five to fifteen minutes after making the purchase, Roberts returned with other police officers to execute the warrant. Upon knocking on the door of apartment 702, they received no answer. When they tried to force open the door, they were unable to do so because a brace-lock nailed to the floor of the apartment made opening the door "virtually impossible for a period of time." They called the fire department, and after approximately an hour and a half of continual banging on the door, the police gained entry to the apartment and arrested the individuals they found inside, James and Williams.

Officers Dickens and Robinson testified that they assisted Roberts with the search warrant, and in preparation for its execution, they and Officer Richmond stood in the alley. They saw two individuals throw a shopping bag, a plastic bag, and numerous brown papers out of the window of apartment 702; sometimes only one individual was at the window. On recovering the items, the officers discovered that they contained a green weed-like substance.

Only Williams testified for the defense. He claimed that he went to 3132 16th Street, N.W., to meet someone named Richard Robinson "to see about a music contract." He had called James to meet him in front of the building and they both went up to Robinson's residence at apartment 702. When they were inside the apartment, Robinson received a telephone call and said he had to leave but would return shortly. James and Williams remained in the apartment. About five minutes after Robinson had left, Williams heard banging on the door. He was frightened by the noise and ran into the bathroom for about five minutes. He testified that James also appeared to be scared, and "got up and ran too," but he did not see where James went because he was in the bathroom, although the door was open. When he came out of the bathroom, he called the police and reported that someone was trying to burglarize the apartment. After that, Williams and James sat in the living room for somewhere between 30 minutes and an hour while the banging continued.

## II

On direct examination, counsel for Williams asked him whether he had thrown any marijuana out the window during the hour and a half he was in the apartment. Williams responded that he did not, but did not make any statement whether James had or had not done so. Thereafter, counsel for James sought to examine Williams as his witness in order to ask "whether he saw Mr. James throw anything out of the apartment window." Williams' counsel objected that the question was beyond the scope of direct, and the trial court refused to allow the examination. Subsequently, the prosecutor asked Williams if he "and Mr. James [went] to the window and [threw] some items out?", if "neither [he] nor Mr. James went to the window during the time that someone was knocking on the door?", and if he "never went to the window?" To each of these questions Williams responded, "No, we didn't."

■ James contends, and the government concedes, that the trial court's refusal to allow cross-examination was error. We agree the trial court should have permitted cross-examination to clarify the ambiguity about James in Williams' response to questions regarding who had thrown marijuana out of the window. *See United States v. Mercks*, 304 F.2d 771, 772 (4th Cir.1962) (if a party in a joint indictment testifies in his own behalf and incriminates his co-defendant, the latter should be extended the right of cross-examination under the Sixth Amendment); *Eder v. People*, 179 Colo. 122, 498 P.2d 945, 946–7 (1972) (negative inferences from defendant's witness' testimony may incriminate co-defendant and require opportunity to cross-examine witness under Sixth Amendment). The government argues that despite the fact that cross-examination was curtailed *in limine*, *per se* reversal is inappropriate because James' attorney sought only to obtain additional information and not to question Williams' credibility or establish bias, and the jury had sufficient information from which to determine whether Williams had seen James throw anything out of the window; hence the error was harmless beyond a reasonable doubt because on cross-examination by the prosecutor, Williams clarified his earlier testimony in a manner which exculpated James.

■ This court has previously held that where the trial court has expressly restricted cross-examination, our standard of review depends upon the scope of cross-examination which was permitted measured against this court's assessment of the appropriate degree of cross-examination. *Goldman v. United States*, 473 A.2d 852, 857 (D.C.1984) (restriction on cross-examination to attack reliability or credibility of witness); *Springer v. United States*, 388 A.2d 846, 856 (D.C.1978) (*in limine* restriction of cross-examination to show bias of witness). We also held that if there has been no cross-examination, curtailment constitutes *per se* reversible error. Where some cross-examination has occurred, the court reviews for harmless error under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). However, in *Delaware v. Van Arsdall*, —— U.S. ——, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the Supreme Court held that the denial of the right to cross-examine to show bias is subject to the harmless error analysis under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In reaching its decision, the court observed that its prior decision in *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), "demonstrates the denial of the opportunity to cross-examine an adverse witness does not fit within the limited category of constitutional errors that are deemed prejudicial in every case." *Delaware v. Van Arsdall, supra*, 106 S.Ct. at 1437. *Harrington* involved the admission into evidence of a statement by the non-testifying co-defendant in violation of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The circumstances of the instant case are analogous. Therefore, we apply the *Chapman* analysis, and conclude that the error was harmless beyond a reasonable doubt.

Williams' testimony created a negative inference that James rather than Williams might have thrown marijuana out of the apartment window. First, Williams stated that in the hour-and-a-half which he and James spent in the apartment during the banging at the front door, he was in the bathroom for about five minutes and James ran somewhere where Williams could not see him. Second, Williams stated that he had not thrown any marijuana out of the window but omitted any mention of James. James' attorney requested to ask Williams whether he saw James throw anything out of the window. Although the prosecutor did ask this question of Williams on cross-examination, he did not establish the basis on which Williams could make the statement for the period he was in the bathroom (*e.g.*, could he hear James while he was in the bathroom, could he see the windows from the bathroom, if he did not see where James ran, was he nonetheless able to say

that James did not run to the window). Williams' testimony was generally exculpatory of James, but the prosecutor's question on cross-examination did not completely dispel the negative inference created by Williams' earlier testimony.

However, the government's case was so strong that any negative inference created by Williams' testimony would not have resulted in any prejudice to James. The police had staked out the building in preparation of executing the search warrant. They testified that they saw two men throwing bags out of the window of apartment 702. As Officers Dickens and Robinson observed two windows open and two subjects throw bags out of the windows of apartment 702, Officers Roberts and Battle went upstairs to the apartment and attempted to gain entry, and Officer Richmond stood outside the front of the apartment building. No one entered or left the apartment during that time. James and Williams were the only persons found in the apartment. Therefore, the fact that Williams' testimony created an inference that James and not Williams ran to the window to throw marijuana out could not have affected the outcome of the trial.

### III

■ D.C. Code § 14–305(b)(1) (1981) permits the introduction of certain prior convictions for the purpose of attacking the credibility of a witness. These convictions are limited, under subsection (A) to a criminal offense punishable by death or imprisonment in excess of one year, and under subsection (B) to offenses involving dishonesty or false statement regardless of punishment. Threats to do bodily harm is punishable by a fine of not more than $500 or imprisonment of not more than six months or both. D.C.Code § 22–507 (1981). Nor does it involve dishonesty or a false statement. Therefore Williams' prior conviction of threats does not qualify for admission under D.C. Code § 14–305(b)(1)(A) or (B). *Cf. Akers v. United States,* 374 A.2d 874, 878 (D.C.1977) (assault does not involve dishonesty or false statement and cannot be used to impeach credibility of witness); *Williams v. United States,* 337 A.2d 772, 776 (D.C.1975) (Congressional sponsors "clearly intended that offenses to be excluded [from the statute] are primarily those resulting from passion and short temper." (quoting *Durant v. United States,* 292 A.2d 157, 160 (1972), *cert. denied,* 409 U.S. 1127, 93 S.Ct. 946, 35 L.Ed.2d 259 (1973))). Since there was no objection to the impeachment at trial, we review Williams' contention that his impeachment with a 1981 misdemeanor conviction for threats was improper for plain error. *Dorman v. United States,* 491 A.2d 455, 461 (D.C. 1984) (en banc); *Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (en banc) ("the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial …").

■ The prosecutor's impeachment of Williams came toward the end of a lengthy cross-examination. Prior to the impeachment, the prosecutor had asked Williams whether he knew if there was any marijuana in apartment 702, to which he responded "Not that I know of." The prosecutor then asked Williams about the entry of the police. Williams stated that the police had come into the apartment, and told him somebody had called the police. Williams responded that he had called the police, and then "[the police] snatched us up and started beating us, that's all." Williams also described how he was questioned by the police while one police officer held a pen knife. The prosecutor proceeded to ask:

Q How many officers came in, sir?

A It was about seven or eight officers.

Q Did they put handcuffs on you?

A Yes, they did.

Q And did they also pull a pen knife on you?

A A knife, a pen knife, yes.

Q Did he threaten you?

A I don't—I mean, maybe that is what he thought, you know.

Q   You know what a threat is, don't you?

A   Maybe he wanted me to get scared.

Q   You know what a threat is, don't you?

A   Yes, I know.

Q   In fact, sir, aren't you the same Robert O'Neal Williams who has been convicted in the District of Columbia of a charge of threats in 1981?

A   Yes, I am.

THE COURT: At this time we need a cautionary instruction.

The trial court instructed the jury that a prior criminal conviction is admitted into evidence solely for consideration in evaluating Williams' credibility.

Applying the *Dorman* test,[1] we find no objectionable sequencing of questions. The impeachment did not relate to an element of the offense, but to a collateral matter under circumstances which would have made the impeachment proper had Williams' prior conviction been an impeachable offense.

In *Dorman*, which also involved a review for plain error, the en banc court concluded that, although Dorman's "defense hinged on his argument that he was telling the truth and that the police officers ... were not," because the evidence against him was overwhelming and the judge had three times instructed that the previous convictions pertained only to his credibility, the jury's decision was not substantially swayed by the error. Here too the jury's determination of guilt turned on its assessment of the credibility of the testimony of the police· officers and Williams, the government's evidence was very strong, and the trial court instructed the jury on

the limited use it could make of the impeachment. Although the impeachment never should have occurred, and thus the instruction never given, the error was not compounded by the improper sequencing of cross-examination questions. Accordingly, in view of the improbable nature of Williams' testimony, we conclude the error was harmless.

## IV

■   As to appellants' other contentions, we find no error, much less plain error. The trial court accepted appellants' stipulation that 349,500 milligrams of marijuana was a useable amount without inquiring of appellants if the stipulation was knowingly and intentionally made by them. Contrary to their contention that the court erred in failing to conduct an inquiry pursuant to Super.Ct.Cr.R. 11, appellants' stipulation was not the functional equivalent of a guilty plea because it did not dispose of all issues in the case and simply "make the trial court's task academic." *Glenn v. United States*, 391 A.2d 772, 775 n. 4 (D.C. 1978); *see also United States v. Brown*, 138 U.S.App.D.C. 398, 401, 428 F.2d 1100, 1103 (1970). Identification was not conceded by appellants—they obtained an instruction regarding misidentification—and the defense evidence disputed that they knowingly possessed marijuana at the time of their arrest: Williams testified that he and James did not live in apartment 702 where they were arrested, had never been there before, and were only there for a brief period. Thus, a Rule 11 inquiry was not required.

■   Nor did the trial court err in admitting into evidence two exhibits which stated

---

1. In *Dorman v. United States*, 491 A.2d 455 (D.C.1984) (en banc), this court stated:

    The test is whether the prosecutor's reference to a defendant's previous conviction is such that, under the circumstances, reasonable jurors would naturally and necessarily regard the manner in which the impeachment is accomplished as implying that the defendant is guilty of the crime charged because he was guilty of past crimes. Our test focuses on the

    manner óf impeachment because we acknowledge that to some degree the mere fact of previous conviction impeachment imparts "well-nigh inescapable prejudice on the issue of guilt."

    *Id.* at 460 (quoting *Carter v. United States*, 157 U.S.App.D.C. 149, 151, 482 F.2d 738, 740 (1973)); *see also Bailey v. United States*, 447 A.2d 779 (D.C.1982); *Fields v. United States*, 396 A.2d 522, 526 (D.C.1978).

the seized drugs were marijuana but did not specify that the "marijuana" contained THC. Such a specification was unnecessary. Under D.C. Code § 33–541 (1985 Supp.), "a finding that plant material is 'marijuana' is tantamount to a finding that the material contains THC." *Craig v. United States*, 490 A.2d 1173, 1179 (D.C. 1985); *Blakeney v. United States*, 366 A.2d 447, 448 (D.C.1976). There is no dispute that the challenged exhibits, Exhibits 9 and 10, were marijuana.

*Affirmed.*