Beckwith, Associate Judge,
concurring in part and dissenting in part:
The government’s evidence in this case showed that after a group of teenage girls — including the complainants J.W., B.W., A.L., and L.L. — left a Friday night football game at Coolidge High School, they went into an alley and smoked marijuana. Another group of young people was also hanging out in the alley, and B.W. testified that she recalled seeing appellant T.M. in that group, holding a small black gun. At some point, when the group of girls left the alley and walked down Tuck-erman Street, B.W. looked back, saw that T.M. was behind them with a gun, and alerted her friends that “she about to bust a gun” or “she’s about to shoot the gun.” According to the government’s witnesses, T.M. had separated herself from the group of people with whom she had been walking, crossed the street to the side J.W. and her friends were on, and raised her right arm in a slightly downward angle toward J.W.’s group. Witnesses described hearing a male voice say, “T., if you’re going to shoot it, then get out the light” or “Don’t do it in the light.” A shot rang out and everyone except J.W., who was struck by *409 the bullet in both legs, and L.L., who stayed with J.W., ran away.
On this evidence, the trial court found T.M. guilty of several assault and gun charges. The court also found her guilty of conspiracy — that is, of entering an agreement to commit this criminal offense. D.C. Code § 22-1805a. The court reached this conclusion after rejecting T.M.’s motion for judgment of acquittal on the conspiracy count on the ground that “it can be inferred from the words that were used that there was some prior discussion of what was going to happen” and that the people T.M. was with “knew what she was going to do based on the statements that were made and then advice was given as to how she should commit the act, if you’re going to do it, don’t do it in the light.” Because this ruling constitutes a far-reaching and, in my view, unwarranted extension of what our prior decisions have regarded as sufficient evidence of the agreement that is necessary for conspiracy, I respectfully dissent from my colleagues’ decision to affirm T.M.’s conviction for conspiracy here. I join the court’s rejection on plain error review of T.M.’s Second Amendment challenge to D.C. Code § 22-4504(a), and would therefore affirm the trial court’s judgment in all other respects.
The first element of the offense of conspiracy is “an agreement between [one] or more people to commit a criminal offense.” Campos-Alvarez v. United States, 16 A.3d 954, 965 (D.C. 2011). This court has described this agreement as the “essence” of the crime of conspiracy, Wilson-Bey v. United States, 903 A.2d 818, 841 (D.C. 2006) (en banc), and whether the evidence established such an agreement here is the key disputed issue in T.M.’s challenge to the sufficiency of the evidence.
In concluding that the government had proven the existence of an agreement beyond a reasonable doubt, the court ruled:
I think that this clearly wasn’t her acting alone in that she arrived with a group of people, received encouragement and advice from that group of people. They clearly had been discussing it before she fired the gun, based on the statements that were made, and then they all fled afterward. So I find that that is sufficient to find beyond a reasonable doubt that there was an agreement with other people to commit this act and that those other people were involved in planning the attack. It wasn’t something that was done impulsively. There was following of the victims from the alley and there was discussion as to how it should be done and where it should be done.
The court thus relied primarily upon three facts: (1) that T.M. was with a group of people who walked behind the complainants as they emerged from an alley and walked down Tuckerman Street behind them; (2) that before T.M. fired the gun toward J.W. and her group, an unidentified male stated either “Don’t do it in the light” or “T., if you’re going to shoot it, get out of the light;” and (3) that after the shooting, T.M.’s associates fled. More specifically, the trial court concluded that it could reasonably infer, based on the unidentified male’s statement — “Don’t do it in the light” or “T., if you’re going to shoot it, get out of the light” — that T.M. had “some prior discussion” that evinced an agreement to commit the offense.
In either form this statement was something less than an agreement, or even an endorsement. The question, then, is whether the trial court could fairly infer from this statement, and from the hazy evidence of the movements and actions of T.M.’s group before and after the shooting, that T.M. formed an agreement with another *410 person to commit the assault in this case.[1] An agreement that forms a conspiracy does not have to be proven by direct evidence. Castillo-Campos v. United States, 987 A.2d 476, 482 (D.C. 2010). “[T]he evidence supporting a conspiracy conviction nearly always is circumstantial because there is rarely in a conspiracy case direct evidence of the conspiracy or proof of declarations.” Wheeler v. United States, 977 A.2d 973, 982 n.19 (D.C. 2009). In general, however, “an inference that can sustain a criminal conviction beyond a reasonable doubt is circumscribed,” Harrison v. United States, 60 A.3d 1155, 1164 (D.C. 2012), and as the Supreme Court has cautioned, “charges of conspiracy are not to be made out by piling inference upon inference, thus fashioning ... a dragnet to draw in all substantive crimes,” Anderson v. United States, 417 U.S. 211, 224, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974) (internal quotation marks and citations omitted).
Contrary to the trial court’s reasoning here, it is impossible for a rational juror to conclude beyond a reasonable doubt, based on the fact that an unidentified male told T.M. to “get out of the light” if she was going to shoot the gun, that T.M. and this male — or T.M. and somebody else — engaged in “some prior discussion” during which they formed an agreement to commit the shooting.
As an initial matter, it is uniquely difficult to infer an agreement in circumstances where only the alleged principal is charged with conspiracy, where the alleged coconspirator’s identity, possible motives, and relationship to the principal are unknown and completely undeveloped at trial, and where the principal’s conduct was a single assaultive act that could have been spontaneously committed and did not necessarily contemplate the need for cooperation. At a more fundamental level, the inferences the trial court had to make in order to conclude that T.M. formed an agreement to commit the assault were speculative and therefore not reasonable. The evidence established at most that another person who was expecting T.M. to shoot a gun gave her advice about how to avoid detection. But proof that someone believed T.M. was preparing to fire a gun and did not want her to be seen doing so is not tantamount to proof that T.M. and this person had formed an agreement to commit the offense. As my colleagues in the majority acknowledge, “mere presence or awareness is insufficient to make out a conviction for ... conspiracy.” Ante at 404 (quoting McCoy v. United States, 890 A.2d 204, 211 (D.C. 2006). Even if the trial court were correct that the unidentified speaker’s words suggested that T.M. had discussed the shooting with the speaker, the record is still devoid of any basis for inferring that the two formed an agreement to commit the offense.
The trial court discerned evidence of an agreement in the fact that the person who told T.M. not to shoot the gun in the light helped her commit the shooting by giving her “encouragement and advice.” In the court’s view, aiding and abetting was the same as conspiring in this case, “because if you’re assisting her in doing it and wanting it to come about, why isn’t that the same as agreeing with her that it should be done and helping her make it come about[?]” Even assuming the evidence was sufficient to establish that telling T.M. to stay out of the light “if you’re going to shoot it” — an instruction T.M. ignored— *411 constituted aiding and abetting, the trial court’s suggestion that one who aids and abets a shooter must also have formed an agreement with that shooter is the opposite of what our case law says and is not substantiated by the record in this case. “[B]oth the Supreme Court and this court ... have emphasized that [conspiracy] liability and aiding and abetting are distinct legal theories that require proof of different elements.” Wilson-Bey, 903 A.2d at 839. Aiding and abetting has “a broader application” than conspiracy, and “makes a defendant a principal when he consciously shares in any criminal act whether or not there is a conspiracy.” Nye & Nissan v. United States, 336 U.S. 613, 620, 69 S.Ct. 766, 93 L.Ed. 919 (1949). Nothing in the record supports a reasonable inference that the speaker here formed a mutual agreement with T.M. or did anything more than provide unilateral advice.
The court’s holding allowing the conspiracy conviction in this case to stand also conflicts markedly with our existing case law on conspiracy. In Harrison v. United States, 60 A.3d at 1162-67, for example, Cyrus Contez Harrison was convicted of conspiracy to obstruct justice (as well as the substantive offense of obstruction of justice) based on three recorded phone calls he made to his father from the D.C. Jail. 60 A.3d at 1159-60. In these phone calls he asked his father to get the phone number of “Little Keith,” a friend of Mr. Harrison and a potential witness against him at trial; stated that he was trying to find out why Little Keith had come back to town; and asked his father, “[D]id they ever take care of [Little Keith]?” Id. at 1160. His father replied, “[T]hey talked to his father, right, but I don’t think anyone talked directly to him.” Id. Other testimony showed that Mr. Harrison’s uncle had spoken to Little Keith at Little Keith’s boxing gym, where he asked if Little Keith was “coming to court” and stated that “all he [Little Keith] had to do is stay away .., then everything will be okay.” Id. (ellipsis in original). The court held that no rational juror could have found Mr. Harrison guilty beyond a reasonable doubt, as “the most that one could say on this record is that it may be ‘more likely than not,’ or ‘highly probable,’ ” that he conspired with his father to influence or prevent Little Keith’s truthful testimony.[2] Id. at 1164-65, The guilty verdict required inferences as to Mr. Harrison’s intentions, the existence and content of his ■ unattested communications with his uncle, his uncle’s intentions, and the meaning of the words “they” and “take care of’; “on examining the evidence as a whole, the conclusion [was] inescapable that the circumstantial evidence fell below the standards for determining its sufficiency.” Id. at 1165 (quoting People v. Piazza, 48 N.Y.2d 151, 422 N.Y.S.2d 9, 397 N.E.2d 700, 706 (1979)).
The trial court’s finding that T.M. had entered an agreement to commit the shooting in this case stemmed from far more conjectural inferences than those deemed insufficient to support the conspiracy conviction in Harrison. To find T.M. guilty of conspiracy, a factfinder would have to infer from the evidence that T.M. considered shooting J.W. before the unidentified male saw her with the gun and made the statement, that she discussed her plan with him, and that they agreed explicitly or implicitly that she would carry out the shooting. As in Harrison, it is possible things happened that way. But also as in Harrison, a rational factfinder *412 had no basis for reaching that conclusion beyond a reasonable doubt.
My colleagues in the majority do not grapple with Harrison or say how it can be distinguished. They conclude instead that the trial court here drew “the same inferences” that were drawn in two other cases in which this court rejected sufficiency-of-the-evidence challenges to conspiracy convictions in the absence of direct evidence of an agreement. Yet these two cases — McCoy v. United States, 890 A.2d 204 (D.C. 2006), and Mitchell v. United States, 985 A.2d 1125 (D.C. 2009) — feature very specific evidence enabling the factfin-der to draw reasonable nonspeculative inferences regarding the existence of an agreement. The inferences in McCoy and Mitchell cannot be fairly likened to the trial court’s inference here that T.M. must have entered an agreement with the person who suggested that she get out of the light. Given the glaring absence in this record of the kind of evidence of conspiracy the government presented in McCoy and Mitchell, these cases support T.M.’s sufficiency challenge more than they undermine it.
In McCoy, the case on which the government primarily relies, the government presented evidence that a group of friends— comprised of appellants Edward McCoy and Darryl Woodard and two of their friends, Jerome Edwards and Todd Law-ton — engaged in a fist fight with another group of friends at a nightclub. 890 A.2d at 207. Sometime later on, Mr. McCoy, Mr. Woodard, Mr. Edwards, and Mr. Lawton went to the parking lot and got into a Volvo. According to Mr. Lawton, the Volvo did not leave the parking lot until a Chevrolet driven by Michael Cary, a member of the group Mr. McCoy’s group had fought with, drove off, at which point the Volvo chased Mr. Cary’s car at high speeds. Id. at 207, 214. Mr. Lawton testified that as the Volvo caught up to Mr. Cary’s car, Mr. McCoy screamed instructions to Mr. Edwards, the driver, to stay even with the Chevrolet through a tunnel. Id. at 214. Mr. Edwards did so, and Mr. McCoy shot at Mr. Cary out of the Volvo’s passenger-side window. Id. The court held that this evidence was sufficient to permit a reasonable juror to infer that Mr. McCoy conspired with Mr. Edwards to assault Mr. Cary with a dangerous weapon. Id.
The proof that Mr. McCoy entered an agreement to commit the shooting undoubtedly depended upon various inferences. The reasonableness of those inferences is rock-solid, however, compared to the speculative leap required to convict T.M. of conspiracy here. As T.M. points out in her reply brief, the court in McCoy, in finding sufficient evidence of an agreement, relied upon evidence of shared motive (stemming from the two men’s involvement in a fist fight with the complainant) and coordinated action (in the extent to which Mr. Edwards and Mr. McCoy worked together to accomplish the assault) that is completely lacking in the present case. Mitchell, the other case the majority relies upon, likewise upheld a conspiracy conviction based on evidence that the appellants worked together to shoot multiple victims: they emerged simultaneously from behind trash dumpsters wielding guns, committed the shooting, got into an SUV, and fled together. 985 A.2d at 1135. In T.M.’s case, by contrast, the record is devoid of evidence that T.M. shared a motive with the unidentified male, or that the two acted in concert. Indeed, she disregarded the one instruction the person gave her. See United States v. Moss, 591 F.2d 428, 435 (8th Cir. 1979) (stating that “[tjhere must exist some element of affirmative cooperation or agreement to cooperate in the object of the conspiracy” and that neither “mere association with an individual engaged in an illegal enterprise” *413 or “mere knowledge, approval or acquiescence in the object of an alleged conspiracy sufficient to render an individual a part of a conspiracy”).
The existence of an agreement between T.M. and at least one other person, in the sense of a “joint commitment” to a criminal endeavor, is not a mere technicality but “the fundamental characteristic of a conspiracy.” Ocasio v. United States, — U.S. —, 136 S.Ct. 1423, 1429, 194 L.Ed.2d 520 (2016). “The essential element of conspiracy is the agreement to commit an unlawful act, which distinguishes it from other substantive offenses and aiding and abetting that do not require proof of an agreement.” Pearsall v. United States, 812 A.2d 953, 961 (D.C. 2002) (citation omitted). See also Wilsow-Bey, 903 A.2d at 841 (“[T]he agreement is the ‘essence’ or ‘gist’ of the crime of conspiracy.” (quoting 2 Wayne R. LaFave, Substantive Criminal Law § 12.2(a) (2d ed. 2003))). As the evidence in this case did not approximate what our case law requires to demonstrate beyond a reasonable doubt that T.M. formed an agreement to commit the shooting in this case, I respectfully dissent from the court’s holding to the contrary.

. The centrality of the statement to the trial court's ultimate ruling is made clear by the court’s observation, in the course of an evi-dentiary ruling, that "there [was] not independent evidence” — without the statement— “that would prove a conspiracy by a preponderance of the evidence."

. The court analyzed Mr. Harrison's arguments in terms of the specific intent element of both the conspiracy and obstruction of justice charges, but its analysis here is equally applicable to the "agreement” element of the offense of conspiracy.